**Philip L. BADEN et al., Plaintiffs,**

v.

**CURTISS BREEDING SERVICE,**
**Defendant.**

**Civ. No. 2293.**

United States District Court,
D. Montana,
Missoula Division.

Aug. 29, 1974.

---

Lawrence F. Daly, Garlington, Lohn & Robinson, Missoula, Mont., for plaintiffs.

P. Keith Keller, Keller, Reynolds & Drake, Helena, Mont., for defendant.

## ORDER GRANTING A NEW TRIAL OR IN THE ALTERNATIVE A REMITTITUR

RUSSELL E. SMITH, Chief Judge.

Plaintiffs recovered damages for the breach of an implied warranty in the sale of bull semen.

As to Plaintiffs Baden:

Defendant's motion for a new trial is granted on the issue of damages only unless Plaintiffs Baden shall on or before September 15, 1974, file with the clerk of this court a consent to the entry of judgment in the amount of $28,200.-00. If such consent is filed, then judgment will be entered in such amount and the motion for new trial shall be denied.

As to Plaintiff Cranmore:

The defendant's motion for a new trial is granted on the issue of damages only unless Plaintiff Cranmore shall on or before September 15, 1974, file with the clerk of this court a consent to the entry of judgment in the amount of $7,100.00. If such consent is filed, then judgment will be entered in such amount and the motion for new trial shall be denied.

The reasons for this order are these:

■ Under the instruction submitted the jury was permitted to award damages for the loss of the 1972 calf crop and also for the loss of the 1974 calf crop that might have been expected from the calves born in 1972. It is my opinion that as a matter of law the damages should be limited to the calf crop that might have been expected from the 1971 breeding.

R.C.M.1947 § 87A–2–715, which adopted the Uniform Commercial Code, governs:

*Buyer's incidental and consequential damages.* (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Under the code the rule with respect to consequential damage is:

"All that is necessary, in order to charge the defendant with the particular loss, is that it is one that ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach." 5 A. Corbin, Corbin on Contracts § 1010 at 79

(1964) as cited in White & Summers, Uniform Commercial Code, at 321 (1972)

In the case of semen sold for artificial insemination, the seller knows that if the semen is defective the inseminated cow may not become pregnant and the capital investment devoted to that cow in that year may be totally unproductive. Certainly the loss of a calf or calves is one that ordinarily follows the use of defective semen and one which the parties would reasonably foresee. I have difficulty, however, in extending this foreseeability to the loss of the second calf crop, that is, the calves which would have been produced in 1974 by the 1972 calf crop had there been one.

When a rancher discovers that his cows are barren he may be expected to keep his capital, that is, the ranch, equipment and livestock, busy in what seems to him to be the most productive way.[1] The fact that a calf crop is lost does not mean that the ranch operation stops. Replacements for the cow herd are bought and are bred and the operation continues. The capital is kept busy, and it appears to me that reasonable men in the position of the parties here would not foresee the loss of a second calf crop as a proximate result of the defective semen, nor do I think they would foresee that a plaintiff would so conduct his operations that a second calf crop actually raised necessarily would be of less value than the one which the plaintiff had hoped to raise.

■ I think other considerations buttress the result which I reach even though they do not contribute to the logic of it. I assume that the purpose of the Uniform Commercial Code, taken with other applicable law, is to reach some reasonable rule of damages. The duty to cover (R.C.M.1947 § 87A–2–715), the duty to minimize (Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 414 P.2d 918 (1966)), and the rule requiring some certainty in the measurement of consequential damages (White & Summers, Uniform Commercial Code, 321 (1972)) are designed to extend some rule of reason to the amount of consequential damages which may be awarded.

Many variables affect the commercial production of beef animals. Always present are the factors of the fertility of the heifer, the fertility of the bull, the efficacy of the breeding, the risks of calving, disease, and accident. These risks make the projection of the result of the breeding in any one season somewhat uncertain. But if projections are extended beyond the first calving and into the calving of the calves (a period of over two and one-half years from the first breeding), the effects of the variables are greatly magnified and the projection becomes more uncertain.

Any rule of damages which permits the recovery for losses beyond the first calf crop makes the selling defendant accept in some degree another variable, and that is the risk of the buying plaintiff's management.

Allowing recovery for consequential damages up to the first calf crop does permit plaintiffs to produce evidence to show the effect of the variables in the first year and does make defendant accept what may be inequities in the appraisal of those variables. It may seem arbitrary to hold that the uncertainties up to the first calf crop may be tolerated but that no matter what the proof is the uncertainties beyond that point will not be. At some point, however, the degree of uncertainty permitted becomes a question of law. The fact is that as to the first calf crop we deal with cows that were born and did live long enough to become fertile. In the case of the second calf crop we must project a suppositious calf into a period of suppositious fertility followed by a suppositiously successful breeding which is in turn followed by a suppositiously successful calving, and hence motherhood.

---

1. I am not discussing a duty to cover but rather what persons in the ranching industry might reasonably foresee.

In my opinion the need for these suppositions is sufficient to warrant a distinction between the loss of the first calf crop and the loss of the second and to permit the line to be drawn where I have drawn it.

In the event of a new trial the jury will be so instructed.