No. 12983

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

———————

ZOOK BROTHERS CONSTRUCTION COMPANY,

Plaintiff and Appellant,

-vs-

THE STATE OF MONTANA,

Defendant and Respondent.

———————

Appeal from: District Court of the First Judicial District,
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Gough, Booth, Shanahan and Johnson, Helena, Montana
Ronald Waterman argued, Helena, Montana
Patrick Sullivan argued, Spokane, Washington

For Respondent:

Donald Douglas appeared, Helena, Montana
Cannon and Garrity, Helena, Montana
Donald Garrity argued, Helena, Montana

———————

Submitted: June 3, 1976

Decided: AUG 25 1976

Filed: AUG 25 1976

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

Plaintiff appeals from a judgment of the district court, Lewis and Clark County.

Zook Brothers Construction Company (Zook) and the Montana Department of Highways (State) entered into a contract in June 1967, whereby Zook agreed to construct a segment of highway referred to as the "Montana City Project", a 6.083 segment of interstate and secondary highway in Jefferson County, south of Helena, Montana. The contract allowed 300 days for completion of the project and involved a $3,000,000 contract between the parties.

The instant case involves Zook's claim for damages allegedly caused by the State's failure to inform Zook the State lacked right-of-way access to portions of the project, which is claimed to have caused a delay in scheduled operations and escalated costs of completion. Zook contends 1) it is entitled to damages for costs incurred in completion of the project, 2) for the cost of "standby" on equipment it was unable to utilize due to unforeseen delays, and 3) for profits allegedly lost on this project and subsequent projects due to the delays and tieup of assets.

The delays relied upon by Zook as a basis for its claim were occasioned (a) by Montana Power Company's problem in obtaining a right-of-way for relocation of a utility line, and (b) by the inability of the State to obtain right-of-way across various mining claims through the project.

(a) The utility delay.

The State, after planning the general location of the highway to be constructed, took steps to secure a right-of-way

- 2 -

and to remove existing utilities from the area. The Montana Power Company was contacted regarding the relocation of an electrical transmission line. A relocation contract with Montana Power was approved by the State on June 27, 1967 and contained a provision that all utility moves were expected to be completed by August 31, 1967. Relocation of the power line was critical to Zook's schedule for construction, in that the line had to be removed prior to construction of a frontage road upon which Zook had planned to divert traffic to complete the main highway construction. The power line was not relocated until April 1968.

(b) The mining claim delay.

The State encountered problems in obtaining the right-of-way through various mining claims within the work area. Zook was advised to begin construction on July 17, 1967, although the State was aware there were various problems obtaining right-of-way through the mining claims. At a preconstruction conference held between the State representatives and Zook personnel on July 19, 1967, Zook advised the State of its schedule for completion of the various phases of the project. The State discussed such diverse problems as safety and the protection of wildlife habitat. The State did not advise Zook personnel of the right-of-way difficulties it was encountering.

Upon receipt of the State's order to proceed on July 17, 1967, Zook began to mobilize all of the necessary equipment for completion of the project according to the agreed schedule. However, on July 27, 1967, the State issued a suspension order to Zook which prevented Zook from proceeding with construction in the area of the mining claims during negotiation for and testing of

these claims. Zook's schedule called for completion of "Frontage Road No.4" by September 15, 1967, and diversion of traffic from the existing route to utilize sophisticated blasting techniques, which were intended to reduce great quantities of rock to a size that would allow excavation with self-loading "scrapers" of large rock cuts. Zook also planned to use large quantities of the excavated rock and material as fill in the area involved in the mining claim stop order. However, because of the State's failure to obtain the necessary right-of-way, Zook was forced to abandon its plan of traffic diversion and various fill and excavation requirements were delayed several weeks.

Restrictions on work in the vicinity of the mining claims were lifted on September 22, 1967; the power poles were removed by October 17, 1967; Frontage Road No. 4 was then available for construction work.

On September 6, 1967, Zook personnel informed the State by letter that the utility pole problem and the "mining claims delay has really fouled up our schedule for completion of this project and feel we should be given full consideration for these delays."

On November 12, 1968, Zook submitted a claim for damages resulting from the delays which it claimed caused the 116 day over-run on the scheduled completion date. This claim was rejected by the State. On March 24, 1972 Zook filed a "complete Documentation" [Zook's description] of its claim for an amount far in excess of its original claim. Following the submission of this claim, the State undertook an audit of the Zook records for the purpose of evaluation of that portion of the claim relating to equipment standby costs. Zook's claim was orally denied by the Director of the State Highway Commission after several meetings between the parties to discuss that claim.

- 4 -

Zook brought suit in the district court to recover the amount claimed, based on the State's alleged breach in failing to secure the right-of-way. After a lengthy trial the district court determined:

> "The State of Montana materially breached its contract with Zook and the damages which Zook suffered thereby were a direct and proximate result of such breach."

Zook was awarded a total of $140,917 in damages, consisting of $125,000 for maintenance of equipment in standby status, and $15,917 as additional expense for traffic control costs incurred due to its inability to complete Frontage Road No. 4.

Zook appeals claiming it is entitled to damages far in excess of those granted by the district court. The State cross-appeals on the basis Zook's claim is barred by the special statute of limitations prescribed by section 83-602, R.C.M. 1947, and by the terms of the contract and the judgment of the district court that a breach had occurred is not supported by the evidence. Hearing was had on March 5, 1976 before this Court, and on March 25, 1976, the Court ordered additional briefs and argument limited to:

1. Causal connection between breach and damages.

2. Equipment standby costs.

3. Traffic control costs.

4. Administrative costs.

Arguments heard on June 3, 1976 were restricted to a discussion of the four items enumerated.

The State contends the claim of Zook is barred by the provisions of section 83-602, R.C.M. 1947, which provides in pertinent part:

> "Whenever any contracting agency of the state of Montana provides a procedure for the settlement of any question or dispute arising between the contractor and said agency, the contractor, before

proceeding to bring an action in court under provision of this act, must resort to such procedure within the time specified in his contract or, if no time is specified, within ninety (90) days after the question or dispute has arisen * * *."

The contract between the parties contains a provision requiring:

"In case any claim or dispute arises between the parties hereto, respecting any matter pertaining to this agreement * * * said claim or dispute shall be referred to the Commission by the contractor in writing, and a request for a hearing within a period of sixty (60) days after the claim or dispute has arisen * * *."

The State argues Zook's cause of action, if any, arose as of the July 27, 1967 order from the Director to stop work in the area of the mining claims. The State urges the contract limits the time for filing of a claim to within the 60 day period following the date of the delay. It claims the September 6, 1967 letter from Zook's general manager fails to state a claim in that it does not contain a demand for additional compensation, nor does it express an intention to submit such a claim at any later date. It also notes the letter does not direct itself to the Commission. These alleged facts are urged as grounds for finding that Zook failed to present a claim within the time provided, i.e. 60 days.

This Court is in agreement with the district court's conclusion that these contentions are totally without merit. The claim is neither barred on statutory nor contractual grounds. The letter from Zook was addressed to a Mr. Richard B. Dundas, District Engineer, State Highway Commission, and was sent approximately 40 days after the work stoppage order was promulgated. Zook's letter clearly expressed the contractor's concern regarding the effect of the delays on the over-all project.

- 6 -

Thereafter the State considered the matter, audited Zook's records regarding its claim for standby expenses and held several hearings, at Zook's request, regarding the varied claims of Zook. To date, Zook has received only an oral denial of its claims on February 26, 1973, by the Director of the State Highway Department. Litigation was commenced April 20, 1973 and is clearly not barred by the contractual limitations nor the statutory limitations. The logical rule, and the rule adopted in other jurisdictions, is that a claim or dispute ARISES at the time the State submits a final estimate to the contractor for his approval or rejection. Terry Contracting, Inc. v. State of New York, 280 N.Y.S.2d 450 (1967); Waterman v. State of New York, 241 N.Y.S.2d 314 (1963). To date, no such final estimate has ever been submitted to Zook by the State.

The State's reliance on statutory or contractual limitations is also without merit for the reason the State, through its own actions, led Zook to believe that its claim would receive timely attention and would be reviewed by the State pending an administrative decision on its merits. Zook relied upon the assurances in the State's letter dated September 12, 1967, that the State would give full consideration to all factors relative to the State's failure to obtain right-of-way. Clearly, the State is foreclosed from raising a statute of limitations defense given the above facts.

The State also urges there was insufficient evidence in the record of the district court to support a finding there was a breach of contract upon which to base an award of damages to the contractor, Zook. This Court, in determining a similar dispute, held the failure to obtain highway right-of-way is a material breach of contract which, if it delays a contractor, will sustain an award of damages. Laas v. Montana Highway Comm'n, 157 Mont. 121, 125, 132,483 P.2d 699 (1971).

The Standard Specifications portion of the contract entered into here provides in part:

> "07.17 FURNISHING RIGHT-OF-WAY. All right-of-way for the roadway shall be provided by the Commission without cost to the contractor. All right-of-way may not have been obtained at the time when the bids are opened and the proposal considered, and in that case the award will not be made until the entire right-of-way has been obtained. The submission of a bid will be construed as an acceptance of this condition by the bidder, and no claim for damage or loss of unavoidable delay in securing right-of-way will be considered by the Commission. If the contract is materially delayed because of right-of-way difficulties, due consideration will be given by the Commission in extending the contract time to make proper allowances therefor." (Emphasis supplied.)

The contract between Zook and the State was signed nearly four months prior to the State's obtaining of the right-of-way in the area of the mining claims. Considering similar evidence as establishing a breach of contract, this Court noted in Laas:

> "There is little question but that there was a breach of contract by the State in failing to secure the right-of-way across the Emery property. * * * The standard specifications, one of the contracting documents, specifically provided that the State would provide all of the right-of-way for the roadway without cost to the contractor. The same document further provided that if the right-of-way had not been obtained at the time when the bids were opened, the award would not be made until the entire right-of-way had been obtained. Clearly, the plaintiff had a right to assume, when he received the award and the order to proceed, that the right-of-way had been obtained, or would be obtained without detriment to him.
>
> "The standard specifications take into account that there may be delay between the time the bids are opened and the award is made because of unavoidable difficulties in securing the right-of-way, and further provide that no claim for damages or loss of anticipated profits on that account may be made. But, no provision is made for delay in securing right-of-way after the award has been made and the order to proceed given. The standard specifications further provide that if the contract is materially delayed because of right-of-way difficulties, due consideration will be given by the State in extending the contract time to make proper allowance therefor. This may assist the contractor in avoiding the penalty clause, but it is a far cry from compensating him for idled men and equipment because of

- 8 -

delay brought about by the failure of the State to secure the right-of-way before awarding the contract, or in reasonable time thereafter."

The district court determined in its conclusions of law that "The State of Montana materially breached its contract with Zook and the damages which Zook suffered thereby were a direct and proximate result of such breach." It is clear the record supports such a conclusion and it will not be set aside by this Court. Zook acted in reliance upon the State's implicit representation the right-of-way had been obtained and suffered great expense as a result.

The record indicates that Zook assembled ample equipment to complete this project in the time intended. Testimony from Zook's and the State's witnesses was presented to the effect that Zook was a competent and efficient highway contractor and this project was performed as efficiently as possible, under the circumstances. Zook proceeded with grading activities even though foreclosed from operation in two critical areas, Frontage Road No. 4 and the railroad overpass. Zook also worked as much as possible during the winter shutdown as allowed by the contract, and thereby made some use of the equipment held on the project for completion in the spring. Thus, Zook made every reasonable attempt to mitigate its damages under the State's breach.

Having determined the State's failure to timely relocate the utility lines and obtain right-of-way through the mining claims was a breach of contract that materially damaged Zook, the question now becomes the proper measure of those damages. Section 17-301, R.C.M. 1947, provides:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

For damages to be recoverable under section 17-301, they must "have been within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation." Myers v. Bender, 46 Mont. 497, 508, 129 P. 330.

On appeal, Zook seeks compensation for three separate areas of damage: 1) increased costs of performing the contract; 2) standby costs for idled equipment; and 3) lost profits. These constitute the proper measure of damages under the facts. The contract was let for almost $3,000,000. It involved complete construction of over six miles of interstate highway. At one time or another, Zook had approximately $3,000,000 worth of equipment on the job. It is clear the losses claimed by Zook were foreseeable and would naturally flow from a substantial delay in performance of the contract. The delay that did occur was caused by the State, therefore these losses are properly compensable under section 17-301, R.C.M. 1947.

1) To establish its claim for increased performance costs, Zook utilized the actual business records maintained during its work on the Montana City Project. These records were introduced and admitted without objection during trial. Zook's records contained actual costs consistent with the pay items within the State's contract. Zook limited its claim to nine critical items of highway construction costs that were influenced by the State's breach.

Zook's records show it cost Zook $1,440,483 in straight field costs to perform the work. It also incurred indirect job costs of $166,088 and a general administrative expense of $158,408. Payments by the State for these several items totaled $1,146,293.42, resulting in Zook's loss of $618,685.58 on its performance of the contract.

Zook introduced several alternative methods of determining its loss. One method consisted of an audit of costs and revenues for the entire job including equipment ownership expense. Under this method, Zook suffered a loss of $652,542,85. Another method calculated the reasonable cost of performing the contract and compared it to the State payments. Escalated costs in eight areas of job performance were compared against State revenues. The result showed a loss to Zook of $663,026.66.

Methods of computing the amount of damages may vary from case to case. Under the facts of this case, the Court believes the result derived from Zook's actual cost records is the best evidence of Zook's actual loss. We mention the other methods and the losses they show only to reinforce the determination that the loss shown by Zook's actual cost records is reasonably certain and accurate.

2) Zook claims damages of $613,387 for equipment standby. The claim is based on a list of approximately 100 pieces of equipment idled because of the State's breach. Standby time was computed by examining Zook's business records to determine the actual operating and repair hours for each piece of equipment in each week of a 10 month period running from August 1967 to May 1968. These hours were subtracted from a base of 40 hours per week. The difference was standby.

This method of computing standby time was necessary since neither Zook nor the State maintained standby records during the Montana City Project. In the absence of such records, the use of a 40 hour week as the measure of standby time was reasonable under the circumstances. Zook planned to schedule 2 10-hour work shifts 6 days a week or at least 2 8-hour shifts 5 days a week. This, the evidence shows, is common practice in the construction industry. Compared to the anticipated operating hours of 80 to 120 hours per week, 40 hours is not an arbitrary guideline.

To establish the cost of the standby time, Zook used 50 per cent of the hourly rental rates promulgated by the Montana Highway Department and approved by the State Highway Commission. There was testimony in the record stating these rates were reasonable and below prevalent rental rates at that time. During trial, counsel for the State represented that it could not find certain pieces of equipment shown on Zook's records as working on the Montana City Project. Zook deleted and eliminated standby claims for several items, reducing the damages claimed by some $66,000. Zook's claim for equipment standby costs of $613,387 is reasonable and amply supported by the record.

3) Zook, finally, asks for an award of lost profits on the contract in the amount of $88,249. This amount is equivalent to the 5 per cent profit Zook anticipated when it bid on the job. The rule in Montana as stated by this Court in Cruse v. Clawson, 137 Mont. 439, 448, 352 P.2d 989, and cited in Laas, is that a party:

> "* * * may recover for loss of profits where it is shown that such loss is the natural and direct result of the act of the defendant complained of and that such amount is certain and not speculative."

The record is replete with testimony that Zook was a competent and efficient highway contractor and that it performed the project as efficiently as possible under the circumstances. Highway construction is a hazardous pursuit with no guarantee that a profit will be realized on any particular job. Under the facts of this case, however, we are convinced Zook should recover its anticipated profit. The delays, caused by the State, greatly increased operating costs. They seriously disrupted Zook's schedule and moved the project into higher wage periods and bad weather. The evidence showed Zook had the necessary equipment and expertise to perform the contract in a workmanlike manner were it not for the State's breach. Under these facts, Zook should receive the benefit of its bargain.

Zook also alleges that its losses on the Montana City Project forced it to sell much of its equipment, thus decreasing its profits for several subsequent years. We concur with the district court that the evidence as to these alleged losses is vague and speculative. We find no basis in the record for an award of damages for loss of future profits.

This Court in Spackman v. Ralph M. Parsons, Co., 147 Mont. 500, 509, 414 P. 2d 918 (1966), said the verdict of the trial court will be set aside if:

> "* * * it can be shown with reasonable conviction
> that the [finder of fact] * * * (3) made a mistake
> of law or fact; (4) based its findings on a mis-
> understanding of law or fact * * *."

Where a verdict does not appear to have resulted from passion and prejudice, and any error may be ascertained by mathematical calculation, this Court may properly modify the judgment without reversing it. See: Nesbitt v. City of Butte, 118 Mont. 84,94, 163 P.2d 251; Miller v. Emerson, 120 Mont. 380, 381, 186 P.2d 220;

A.T. Klemens & Son v. Reber Plumbing and Heating Co., 139 Mont. 115, 126, 360 P.2d 1005.

This Court, after a review of the district court's findings of fact and conclusions of law, is unable to determine a basis for the judgment rendered. From the record we cannot discern a basis that supports the damages award given, either in the first judgment or in the amended judgment which added an additional amount in compensation for traffic control expenses incurred. The district court was faced with an enormous volume of highly complex accounting evidence and detailed technical testimony presented on behalf of Zook and the State. A thorough review of the evidence and the record of the district court trial of this matter, leads this Court to the conclusion that Zook is rightfully entitled to the damages set forth in this Opinion, less the $140,917 awarded in the district court.

_Wesley Castles_
Justice.

We Concur:

_John Conway Harrison_

_James B. Daly_

Justices

_Edward T. Dussault_
Hon. Edward T. Dussault,
District Judge, sitting for
Chief Justice James T. Harrison.

Mr. Justice Frank I. Haswell, concurring in part and dissenting in part:

I concur in the holding of the majority that the State breached the construction contract and that Zook's claim is not barred by the special statute of limitations.

I dissent from the amount of damages awarded by the majority -- $1,320,321.58, or almost 10 times the damages awarded by the district court. This award is based on Zook's contention that the delays resulting from relocation of utility poles and acquisition of right-of-way over mining claims in one segment of the project caused a "ripple effect" on other segments of the project with the result that the entire construction project as conceived and bid had to be changed materially which caused losses half again as great as the amount of the original bid and award.

In my view, the focus of the issue is whether the State's breach caused the damages claimed by Zook.

On appeal, the function of this Court is simply to determine the sufficiency of the evidence to support the district court's finding and judgment. Holenstein v. Andrews, 166 Mont. 60, 530 P.2d 476; Kirby v. Kelly, 161 Mont. 66, 504 P.2d 683, and cases cited therein. Here the district court found that only $140,917 of the claimed damages were caused by the State's breach. The gist of the district court's reasoning is found in the following excerpt from its opinion:

> "It is the opinion of this Court that both the State and the contractor miscalculated the total time allowed for the completion of the contract. There was an overrun of 116 days due, in part, to the delays occasioned by the State in not having the entire right-of-way available. Work started on July 25, 1967, and the complete right-of-way was available in mid-October, 1967. However, during this time the contractor was available to work on and did work on a major portion of the project."

In my view, the evidence, though conflicting, is sufficient to support this finding and judgment of the district court. I would affirm the judgment.

Frank R. Haswell
_____
Justice

- 15 -