No. 13228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

DONALD WHITAKER, DOUGLAS
WHITAKER, and GRACE M. WHITAKER,

Plaintiffs and Respondents,

-vs-

FARMHAND, INC., a corporation, and
HAL W. BICK,

Defendants and Appellants.

---

Appeal from: District Court of the Seventeenth Judicial District,
Honorable Thomas Dignan, Judge presiding.

Counsel of Record:

For Appellants:

Moulton, Bellingham, Longo and Mather, Billings, Montana
Ward Swanser argued, Billings, Montana
~~Leonard H. Langen, Glasgow, Montana~~

For Respondents:

Robert Hurly argued, Glasgow, Montana
John M. Kline, Miles City, Montana

---

Submitted: May 4, 1977

Decided: AUG 2 1977

Filed: AUG 2 1977

Thomas J. Kearney
Clerk

Hon. Peter G. Meloy, District Judge, sitting for Mr. Justice
Frank I. Haswell, delivered the Opinion of the Court.

This is an appeal by defendants from a judgment of the
district court, Phillips County, in favor of plaintiffs.

The litigation arises from the sale of a circular sprinkling
irrigation system to plaintiffs by defendants.

The district court found for plaintiffs.

The issues presented for review are:

A.  Did the district court err in finding liability on
behalf of Bick and Farmhand, Inc. in strict liability, negligence
in design, manufacture and installation, breach of warranties,
and the implied warranty of fitness?

B.  Did the court err in rejecting the disclaimer of
warranty and damages provision of the warranty and contract.

C.  Did the district court err in not applying the proper
measure of damages to a commercial loss case?

Plaintiffs are Donald Whitaker, Douglas Whitaker and Grace
Whitaker, farm owners in Phillips County, Montana.  Defendants
are Farmhand, Inc., and Hal. W. Bick, Farmhand's exclusive
dealer in the area.  In May 1972 plaintiffs instigated this suit
against defendants for breach of warranties, negligence in design
and installation, and strict liability, all having to do with a
Farmhand irrigation system which plaintiffs bought through Bick.
Bick counterclaimed for an amount alleged due from plaintiffs and
crossclaimed for indemnity from Farmhand.

Prior to trial Bick and Farmhand stipulated that if liability
is found, they would be liable in the following manner: 25% Bick
and 75% Farmhand, with a total maximum liability against Bick of

$20,000. A nonjury trial was held commencing on February 17, 1975. At the close of trial the parties submitted proposed findings of fact and conclusions of law to the court. The court adopted the plaintiffs' proposed findings and conclusions and entered judgment for plaintiffs. A motion for a new trial made by defendants was denied. Bick and Farmhand stipulated that Farmhand's attorney would perfect this appeal for both defendants.

Plaintiffs' ranch consists of 6,280 acres of deeded land and 2,000 acres of leased land. Prior to the purchase of the irrigation system, plaintiffs farmed 1,000 acres and another 1,000 acres was irrigated by a flood and dike irrigation system. Before the purchase of the irrigation system the 1,000 acres that was irrigated was roughly divided---200 acres irrigated pasture, 250 acres alfalfa, and 600 acres hay and alfalfa. Also prior to the system plaintiffs carried approximately 400 head of cattle and 100 head of sheep.

Plaintiffs first became interested in obtaining a sprinkler irrigation system in about 1964. They wrote to several companies and obtained literature about several brands. In the spring of 1969 they first contacted Farmhand requesting information about its systems.

Farmhand sent plaintiffs a brochure on its irrigating systems and arranged for Bick, its authorized dealer, to contact them. The brochure represented and described the system as: (1) It was portable,(2) it would provide fall pasture, (3) little or no land preparation was necessary, (4) it was dependable, (5) it was safe, (6) it was trouble free, and (7) it had a long life.

On September 15, 1969, Bick came to plaintiffs' ranch to talk about Farmhand's systems. At this time Bick made representations

about the system, i.e., how it was designed to be portable, etc. Plaintiffs took Bick on a tour of their farm and told Bick of their plans for two circles of sprinkler irrigation. Plaintiffs also took Bick to meet their banker to discuss this project. At a later date Bick took plaintiffs and their banker on a trip to see some Farmhand systems in operation. They saw several Farmhand systems, but none had towing wheels.

Plaintiffs then hired Bick to do survey work necessary for setting up the two circles for irrigation. Bick was to bill plaintiffs $500 for the survey work in the event plaintiffs did not purchase the system. If plaintiffs decided to buy the system, the work was to be free.

On October 15, 1969, plaintiffs contracted with Bick to buy the Farmhand 18 tower towable irrigation system. There is some conflict as to whether this was an oral or written contract. Plaintiffs at that time made a down payment of $11,715. The total amount of the contract was $45,800. The Farmhand system itself was $25,540. The balance was for pump, engine, pipe and installation. Most of the installation work was to be done by Bick and his crew but plaintiffs agreed to do some of the work to keep the cost down.

Bick ordered the system from Farmhand, complete with towing wheels. The system arrived at plaintiffs' farm in November 1969, without the towing wheels. Bick's crew, under Farmhand supervision, finished the majority of the erection of the machine in November 1969. Weather prevented finishing. The Farmhand warranty was contained in the operator's manual which arrived at the time the system arrived, subsequent to the initial contract.

- 4 -

On December 15, 1969, the original contract was replaced by a formal written contract. Plaintiffs paid $43,272.52 on these contracts. Prior to either contract with Farmhand, plaintiffs contracted to sell the alfalfa off of the proposed south circle, beginning in 1971 for $12 per ton in 1971 and 1972, and $25 per ton in 1973 and 1974.

Bick's crew and plaintiffs completed erection of the machine in the spring of 1970. The system, without the towing mechanism, was first started in May 1970 on the north circle. Immediately it was discovered the Cummin's pump engine and impeller were too small, as was the propelling engine. Bick replaced the propelling engine at no cost to plaintiffs and ordered a larger Cummin's pump engine and impeller. The impeller was to be free to plaintiffs and the pump engine was to be replaced for $880.

At this time a dispute arose between plaintiffs and Bick. The dispute concerned the amount of work in erecting the system contributed by plaintiffs and the amount done by Bick; it also concerned $3,267 withheld by plaintiffs from the contract price. This was never resolved and plaintiffs refused to pay the additional $880 for the larger pump engine. Bick then sent the new pump engine and impeller back and refused any further service to plaintiffs. Plaintiffs thereafter did business directly with Farmhand.

Throughout the summer of 1970, the system only made 5 rotations. During each of these rotations the system stuck in the ditch which Bick designed. Farmhand personnel came to assist plaintiffs on two occasions during that summer.

The towing system arrived in the spring of 1971. The system was not complete and plaintiffs had to manufacture some parts on their own. A Farmhand crew came to plaintiffs' farm in

the spring of 1971 to do some repair work on the system. Plaintiffs planted the south circle in alfalfa that spring, a year later than originally planned. On the first attempt to move the system from the north circle, where it had been, to the south circle, plaintiffs noticed substantial damage caused by the move. The machine was moved twice more during 1971, back to the north circle and back again to the south circle. The last move was some time in July. During each of these moves, the machine was damaged and needed substantial repair before it could be used.

In late July 1971, plaintiffs attended a meeting in Billings with Farmhand representatives and Bick. The meeting was to work out problems with the system and also the problems between Bick and plaintiffs. At this meeting Farmhand representatives told plaintiffs the towing mechanism was not working properly and the machine should not be towed. To provide for plaintiffs' need for irrigation on the second circle Farmhand at this meeting offered to sell plaintiffs a new Farmhand system for the reduced cost of $26,500 complete. This offer was rejected by plaintiffs and/or their banker. The system was used in the south circle during the years 1972 and 1973, when it was towed out to make room for a new Valley system.

In early 1972, Farmhand offered to sell plaintiffs a used Farmhand system for their second circle for $10,000 on a 50% recourse basis. This offer, too, was rejected by plaintiffs and/or their banker. From this point on plaintiffs' relationship with Farmhand disintegrated. They never contacted Farmhand for additional service, nor did Farmhand tender any service or further proposals.

- 6 -

The district court found defendants liable in strict liability, negligence in design, manufacture and installation, breach of express warranties, and the implied warranty of fitness. We will discuss these in order.

I. Strict liability.

This theory first came into being because of the problem of the lack of privity in warranty cases. 2 Restatement of Torts 2d accepted this theory in § 402A which reads:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if

"a) the seller is engaged in the business of selling such a product, and

"b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"a) the seller has exercised all possible care in the preparation and sale of his product, and

"b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

Montana adopted the Restatement in Brandenburger v. Toyota Motor Sales, 162 Mont. 506, 513 P.2d 268. This decision provided that although the burden to prove the defect is on the plaintiff, this burden can be met by circumstantial evidence and inferences therefrom.

We have briefly discussed the doctrine of strict liability because it was plead and considered by the trial court. On appeal its application is claimed as error by defendants. It is not reversible error when considered in light of the facts of this case. A more precise legal analysis of the case at the inception would more correctly have confined the

course of the litigation within the bounds discussed hereafter, where it properly belongs and upon which this Court will rest its determination.

II. <u>Negligence in design, manufacture and installation.</u>

The district court in its finding of fact No. 35(1) found that the system "was so negligently, carelessly and recklessly manufactured, designed and installed by the defendants that it never operated for the purpose for which it was sold."

The theory of negligence has been applied against the remote manufacturer in several cases, the leading one MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050. This doctrine has been accepted in 2 Restatement of Torts 2d, §395. Montana has followed this rule in Knudson v. Edgewater Automotive Division, 157 Mont. 400, 486 P.2d 596 and Duchesneau v. Silver Bow County, 158 Mont. 369, 492 P.2d 926.

The facts here clearly show such negligence.

III. <u>Implied warranties of merchantability and fitness for a particular purpose.</u>

The Uniform Commercial Code provisions for these warranties are section 87A-2-314, R.C.M. 1947, for merchantability and section 87A-2-315, R.C.M. 1947, for fitness for a particular purpose. They read:

> 87A-2-314. "Unless excluded or modified * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *
>
> "(2) Goods to be merchantable must be at least such as
>
> "(c) are fit for the ordinary purposes for which such goods are used * * *."

- 8 -

87A-2-315. "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

Most courts now follow the rule set forth in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, which holds the remote manufacturer liable for implied warranties.

The evidence supports the district court's findings that such implied warranties did exist and they were breached.

IV.  Express Warranties.

The Uniform Commercial Code, section 87A-2-313, R.C.M. 1947, provides in pertinent part:

"(1)  Express warranties by the seller are created as follows:
"(a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis for the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b)  Any description of the goods which is made a part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2)  It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty * * * *."

Such affirmations, promises or descriptions were made by Bick to plaintiffs.  Such affirmations, promises or descriptions were also set forth in the Farmhand brochure.  The law appears to be well settled that a remote manufacturer without privity with the purchaser is liable for breach of warranty by advertising on radio and television, in newspapers and magazines,

and in brochures made available to prospective purchasers, if the purchaser relies on them to his detriment. Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612; Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 88 A.L.R. 521; Randy Knitwear, Inc., v. American Cyanamid Co., 11 N.Y.2d 5, 181 N.E.2d 399. The Montana case cited by defendants, Jangula v. United States Rubber Co., 147 Mont. 98, 410 P.2d 462, did not speak to the point. In another case cited by defendants, Jacobson v. Colorado Fuel and Iron Corp., 409 F.2d 1263, the court held that a statement in a brochure did not give rise to an express warranty under every condition. The court, however, implied that it might very well give rise to such a warranty in some cases.

Lander v. Sheehan, 32 Mont. 25, 79 P. 406, held that whether a statement is to be treated as an express warranty is a fact to be determined by the trier of fact. The evidence here supports the district court's finding that Bick and Farmhand made express warranties to plaintiffs, and that they were breached.

Defendants contend the court erred in rejecting the disclaimer of warranty and damage provision of the warranty and the contract.

Defendants claim that even if the court did find such implied and express warranties, they were effectively disclaimed by the Farmhand warranty contained in the erection manual. They rely on several Montana cases which upheld such disclaimers. State ex rel. Mountain States Tel. & Tel. Co. v. District Court, 160 Mont. 443, 503 P.2d 526; Ryan v. Ald, Inc., 146 Mont. 299, 406 P.2d 373; Spurgeon v. Jamieson Motors, 164 Mont. 296, 521 P.2d 924; Riefflin v. Hartford Ins. Co., 164 Mont. 287, 521 675. See also: Section 87A-2-719, R.C.M. 1947.

The question before this Court is not the validity and enforceability of such disclaimers, rather it is the timeliness of the disclaimer. The express and implied warranties were made to plaintiffs prior to the entering into of the contract on October 15, 1969. Plaintiff did not and could not know of the disclaimer until November 1969, when the erection manual came with the machine. A disclaimer or limitation of warranty contained in a manufacturer's manual received by the purchasers subsequent to the sale does not limit recovery for implied or express warranties made prior to or at the time of the sale. Marion Power Shovel Co. v. Huntsman, 246 Ark. 152, 437 S.W.2d 784; Cooper Paintings & Coatings, Inc., v. SCM Corp., 62 Tenn.App. 13, 457 S.W.2d 864; Rehurek v. Chrysler Credit Corp., Fla. App. 1972, 262 So.2d 452; Dougall v. Brown Bay Boat Works and Sales, Inc., 287 Minn. 290, 178 N.W.2d 217.

Even if the Farmhand disclaimer had been made prior to the sale, such disclaimer would not have been effective to destroy the express warranties made in the brochure and by Bick. In 1 Anderson Uniform Commercial Code, § 2-316:28, p. 698, it is stated:

> "When there is a conflict between a specific express warranty and a clause which in general language excludes all warranties, the specific warranty provision prevails."

Nor will a disclaimer of warranty stop a purchaser from recovering on strict liability. 2 Restatement of Torts 2d, § 402A, Comment m; Arrow Transportation Co. v. Fruehauf Corp., 289 F.Supp. 170.

The district court found the implied and express warranties made by Bick and Farmhand remained valid and enforceable. We agree.

Defendants contend if there is liability and damages allowed for loss of production such are not proper after the year 1971, the time the defendants claim the system would not serve the purpose for which it was purchased.

It is the law of Montana that consequential damages cannot accrue past the time the injured party has knowledge of the failure of the equipment and a reasonable time thereafter within which to make other arrangements. Such is the effect of the decision of Bos v. Dolajak, 167 Mont. 1, 7, 534 P.2d 1258. The reasonable man rule of damages is applied in Baden v. Curtiss Breeding Service, 380 F.Supp. 243. Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 414 P.2d 918, points out that in awarding compensatory damages ingenious methods have been propounded and:

> "* * * while such methods serve as useful guides, the final answer rests in good sense rather than mechanical application of formulas." 147 Mont. 506.

In this respect the district court made its finding of fact, No. 46:

> "That Plaintiffs made reasonable effort to get said Farmhand system to irrigate both their fields and to get the Defendants to fix said system so it would irrigate both fields; that when they once determined that the Defendants would not fix said machine to irrigate both fields, they made reasonable efforts to acquire other means of irrigation; and they did acquire one other pivot irrigation system; that their financial condition prevented them from acquiring that irrigation system any sooner; and their financial condition prevents them from acquiring a second irrigation system up to and including the date of trial; that Plaintiffs have done everything reasonably required of them to cover and to mitigate their damages."

The instant case is not unlike the factual situation of Bos v. Dolajak, supra, where the Court found that the silo 'was an item of property with special characteristics. It could not be replaced the next day at the local hardware store or automobile dealership." Here, the plaintiffs were engaged in

a large agricultural business and wanting to improve production contracted for a complete new method of production of hay. To accomodate the new method defendant Bick surveyed the premises and made the necessary recommendations which required the removal of the old dike and flood system and ditches.  In reliance on the contemplated increase in hay production plaintiffs contracted to sell the hay to be produced.  Concerning the date plaintiffs became aware the machine would not work, it appears that until the fall of 1973 plaintiffs with the urging of defendants attempted to make the machine serve the purpose for which it was designed and sold.  There was no evidence produced by defendants as to the efforts upon the part of plaintiffs to mitigate.  The burden of proof as to mitigation is upon the defendants.  Klemens & Son v. Reber Plumbing & heating Co., 139 Mont. 115, 360 P.2d 1005. This burden includes establishing that plaintiffs could have mitigated the damages but failed to do so.  See: LTV Aerospace Corp. v. Bateman, Tex.App.1973, 492 S.W.2d 703.

There is substantial evidence the plaintiffs did not have the financial capability to acquire other satisfactory devices to accomplish the purpose for which they arranged their operation as designed by the defendants until after the 1974 season.  The district court so found.

This Court is an appellate court and is confined to the record made before the district court.  The findings of fact and conclusions of law of the district judge who heard the witnesses testify, are to be sustained if there is substantial credible evidence to support them.  Bender v. Bender, 144 Mont. 470, 397 P.2d

957; Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48; Cope v. Cope, 158 Mont. 388, 493 P.2d 336.

The record here discloses substantial evidence to support the district court's findings, conclusions and judgment.

The judgment is affirmed.

_____
Hon. Peter G. Meloy, District
Judge, sitting for Justice Frank
I. Haswell.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 14 -