No. 85-356

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

VANDALIA RANCH, INC., a Montana
corporation,

        Plaintiff and Respondent,

   -vs-

FARMERS UNION OIL & SUPPLY COMPANY
OF HINSDALE, MONTANA, MONSANTO
COMPANY, et al.,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Valley,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stuart Kellner, Helena, Montana
        Pearce, Anderson & Durick; Patrick W. Durick argued,
        Bismarck, North Dakota

    For Respondent:

        Smith, Baillie & Walsh; James R. Walsh argued, Great
        Falls, Montana
        Robert Hurly, Glasgow, Montana

---

Submitted: April 8, 1986

Decided: May 9, 1986

Filed: MAY 9 - 1986

_____
                  Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Monsanto Company (Monsanto) appeals a jury verdict entered against it and defendant Elanco Products Company (Elanco) in Valley County District Court. The jury awarded plaintiff over $200,000 in damages for loss of its wheat crop which had been treated with herbicides manufactured and marketed by Monsanto and Elanco. We affirm, with modification.

The issues are:

1. Was the District Court in error in disregarding certain disclaimers of liability and limitations of remedies printed on the cans of Far-Go and in the Far-Go instructions?

2. Did the District Court err in instructing the jury that any ambiguities in the wording on the labels and instructions for Far-Go must be resolved against Monsanto?

3. Did the District Court properly admit into evidence the expert testimony of Dr. Peter Fay and Donald Watterud?

4. Was there substantial evidence to support the jury's verdict on defendants' liability and on the amount of damages?

Vandalia is a family farm corporation owned and operated by a father and two sons, the Strommens. At the time involved here, Vandalia Ranch consisted of over 2,000 acres of irrigated and non-irrigated cropland, and about 500 cows.

In 1980, the Strommens anticipated a weed problem with wild oats and pigeon grass. They had used herbicides and other methods to control weeds, but had not found anything which satisfied them. After reading advertisements in farm journals and receiving oral recommendations from Monsanto and Elanco representatives, the Strommens decided to use a tank mix of Far-Go, manufactured and marketed by Monsanto, and Treflan, manufactured and marketed by Elanco. They purchased

2

the herbicide from Farmers Union Oil & Supply Company of Hinsdale, Montana (Farmers Supply). Farmers Supply also applied the herbicide.

This case involves 495 acres planted with Prodax spring wheat seed, on which the Far-Go/Treflan mix was used. Having received no instructions to do otherwise, the Strommens followed their usual procedure in planting the seed in the bottom of furrows at a depth of 1½ to 2 inches. Then the Farmers Union representative, following the written Far-Go instructions, applied the herbicide to the soil surface and mixed it into the top 1 inch or 1½ inches of soil using a multi-weeder implement. In the process of mixing, the furrows were smoothed out and the seeds were left 3 to 4 inches deep in the soil. There was testimony that this was too deep. The seed failed to germinate and a replacement crop had to be planted. Vandalia sued Monsanto, Elanco, and Farmers Supply under theories of breach of implied and express warranty and strict liability in tort.

The jury found no breach of implied warranty by any of the defendants and no fault on the part of Vandalia or Farmers Supply for any damages. It found that Monsanto and Elanco were each 50 percent liable to Vandalia for damage under breach of express warranty and strict liability in tort. This appeal is brought solely by Monsanto so that we are not concerned with Elanco or its Treflan herbicide.

I

Was the District Court in error in disregarding certain disclaimers of liability and limitations of remedies printed on the cans of Far-Go and in the Far-Go instructions?

The written instructions furnished with the Far-Go herbicide set forth limitations of warranty and liability

3

which confined Monsanto's liability for damages from use of Far-Go to providing a free replacement batch of herbicide, or a refund of the purchase price. The Strommens testified that they were not made aware of the limitations on Monsanto's liability until a copy of the instructions was mailed to them after they had made a claim for their losses. The District Court held that Monsanto's limitations on liability were not part of the contract between the parties because the limitation clause was not negotiated between the parties and was not part of the bargain. The District Court also ruled that the limitations were unconscionable. As a result of these rulings, the jury was not allowed to consider the limitations of liability in assessing damages.

A disclaimer or limitation of warranty contained in a manufacturer's manual received by purchasers after sale does not limit recovery for implied or express warranties made before or at the time of sale. Whitaker v. Farmhand, Inc. (1977), 173 Mont. 345, 354, 567 P.2d 916, 921. There is substantial evidence in the record to support the conclusion that the Strommens were not aware of the Monsanto limitations on liability, whether through advertisements which they had read, through the written disclaimers on the drums, through the instruction disclaimer, or through their oral contract for the purchase and application of the chemicals. We affirm the District Court's holding that the disclaimers of liabilities and limitations of remedies printed on the cans and in the Far-Go instructions were not a part of the contract between the parties. Because the limitations were not a part of the contract, we do not find it necessary to rule upon the holding of the District Court that the limitations of liability were unconscionable.

4

## II

Did the District Court err in instructing the jury that any ambiguities in the wording on the labels and instructions for Far-Go must be resolved against Monsanto?

This issue relates to the Far-Go planting and application instructions, as they were used by the Farmers Union representative. The District Court instructed the jury, over Monsanto's objections, that any ambiguities in the labels and instructions provided by defendants should be construed against them. Monsanto cites an Oregon case, Weber v. Kamyr, Inc. (Or. 1974), 525 P.2d 1307, 1314, which held that this rule of construction is a rule of law for the court to apply and is not a proper subject for a jury instruction. Vandalia argues that this jury instruction was justified because, at trial, defendants presented the meaning of the application instructions as a factual issue.

We conclude that under the Monsanto case as presented to the jury, the meaning of the written instructions for planting and application constituted an issue of fact for determination by the jury. We conclude that the jury instruction is a correct statement of law under the facts of the present case. See § 28-3-206, MCA. We affirm the giving of this instruction.

## III

Did the District Court properly admit into evidence the expert testimony of Dr. Peter Fay and Donald Watterud?

At trial, Vandalia presented expert testimony by Dr. Peter Fay of Montana State University about his greenhouse study of the effects of deep-seeding and herbicide incorporation on spring wheat. Vandalia also presented testimony by Donald Watterud as to the potential crop yield of its 495 acres of field.

5

Monsanto argues that Dr. Fay's testimony should not have been admitted into evidence. Dr. Fay testified in a deposition that he was unable to draw any conclusions as to this case as a result of his greenhouse study. Monsanto argues therefore that his testimony did not meet the purpose of expert testimony as defined in Rule 702, M.R.Evid.:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Expert opinion is admissible if the matter is sufficiently beyond common experience that the opinion of the expert will assist the trier of fact. State v. Campbell (1965), 146 Mont. 251, 258, 405 P.2d 978, 983. Although he was unable to draw specific conclusions as to this case, Dr. Fay made general observations about the effects of deep-seeding, cold soil, soil type, Far-Go, and Treflan on dwarf and semi-dwarf wheat. These observations were based on his studies and years of experience in horticulture. We conclude that those observations assisted the jury to understand the evidence and determine facts at issue. We hold that it was not error to admit his testimony into evidence.

Monsanto argues that the testimony of Donald Watterud as to potential crop yield should not have been admitted into evidence under Rule 401, M.R.Evid., because the testimony was irrelevant as to damages. Mr. Watterud testified as to the potential crop yield of the 495 acres based on his estimate made in 1984 from a small area of the field. Monsanto contends that because of the size and distance in time of the sample, Donald Watterud's testimony did not relate to any fact that is of consequence in the action.

6

Rule 401, M.R.Evid. provides that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. Mr. Watterud's testimony has the tendency to make the amount of crop loss claimed by Vandalia more probable. There was testimony that actual crop yield figures for spring wheat on the 495 acre section were not available. The Strommens had not planted a comparable crop using a herbicide, irrigation, and fertilization. Monsanto also argues that Mr. Watterud's testimony is too remote. We will not interfere with the District Court's determination of whether evidence is too remote in time or space unless manifest abuse of discretion is shown. Preston v. McDonnell (Mont. 1983), 659 P.2d 276, 277, 40 St.Rep. 297, 299. Given the absence of actual crop yield figures for spring wheat on the 495 acres, Mr. Watterud's testimony appears to be the best available evidence. No manifest abuse of the District Court's discretion has been shown. We hold that Mr. Watterud's testimony was properly admitted into evidence.

IV

Was there substantial evidence to support the jury's verdict on defendants' liability and on the amount of damages?

The jury awarded Vandalia the following damages for breach of express warranties under contract theory:

| | |
|---|---|
| Loss of 1980 spring wheat crop | $135,831.20 |
| Loss of baled straw | 31,828.12 |
| Loss of grazing | 13,095.00 |

It awarded damages under a strict liability theory as follows:

| | |
|---|---|
| Loss of 1980 spring wheat crop | $64,600.10 |
| Loss of baled straw | 18,248.12 |
| Loss of grazing | 13,095.00 |

7

Monsanto attacks this verdict on several grounds.

First, Monsanto argues that the testimony of Vandalia's expert Mr. Turner that Vandalia's loss was caused by use of the herbicides is "so inconsistent, unfounded, and obviously incorrect that it should not be allowed to support a verdict." No objection was made at trial to Mr. Turner's qualifications or conclusions. Therefore, we will not consider the issue. Penn v. Burlington Northern, Inc. (1980), 185 Mont. 223, 228, 605 P.2d 600, 604.

Monsanto contends that, in this case, implied warranties under the Uniform Commercial Code offer greater protection than do the express warranties claimed by Vandalia. The jury's verdict makes no sense, argues Monsanto, because they found a breach of express warranty but no breach of implied warranties. We first examine the jury's verdict that express warranties were breached.

Whether a statement is an express warranty is an issue of fact. Whitaker v. Farmhand, Inc. (1977), 173 Mont. 345, 354, 567 P.2d 916, 921. This court will not disturb a jury's determination of fact when there is substantial evidence to support it. Whitaker, 567 P.2d at 923. Here, the Strommens testified that they mentioned Prodax spring wheat as a possible crop on their land, and that the Monsanto representative recommended the use of the Far-Go/Treflan mix to control wild oats and pigeon grass on their crop. The evidence supports the jury's finding that express oral warranties were made by Monsanto to the Strommens and that those warranties were breached. Because Vandalia would not be able to recover any more damages if a breach of implied warranties was found, it is not necessary for us to consider whether the jury should also have found that Monsanto breached implied warranties.

8

Monsanto argues that there is no credible evidence to support the award of damages for loss of straw and grazing. Vandalia presented testimony by Eliot Strommen and by an expert witness as to calculations of these damages. There is nothing in the record to contradict this testimony, and we therefore affirm the jury's verdict as to these damages.

The jury set the date on which interest on damages would begin accruing as October 16, 1980. According to the jury form, this date was the expected date of harvest of the crop. Monsanto argues that this determination is nonsensical, because that puts the date of expected harvest after the date (first week of October, 1980) on which the replacement crop was actually harvested. We are unable to discern any basis for setting the expected date of harvest after the actual date of harvest of the replacement crop.

This Court may properly modify a judgment when the verdict does not appear to have resulted from passion and prejudice, and when any error may be ascertained by mathematical calculation. Zook Bros. Construction Company v. State (1976), 171 Mont. 64, 76, 556 P.2d 911, 918. We have no reason to believe that the jury set the expected date of harvest on the basis of passion or prejudice. We therefore modify the judgment as to the expected date of harvest. Farmers Union Exhibit #3 provides information on prices for spring wheat on various dates in fall 1980. It includes a price within the first week of October -- on October 2, 1980. We remand this matter to District Court for recalculation of damages, using October 2, 1980 as the expected date of harvest of the spring wheat crop. With the exception of this recalculation, we affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
John C. Sheehy

_____
Justices

10

Mr. Justice John C. Harrison, concurring and dissenting:

I concur and dissent.

I would return the case to the District Court on the issue of damages. I find no credible evidence to support a target yield expectation of from 70 to 80 bushels per acre. In addition to allow the testimony as to how many pounds of nitrogen or any fertilizer is required to raise a bushel of wheat is so speculative that it should not have been allowed.

_____
Justice