No. 13378

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

EDWARD R. SIKORSKI,

Plaintiff and Respondent,

-vs-

RAY OLIN and ROLIN
MFG., INC.,

Defendants and Appellants.

---

Appeal from:  District Court of the Sixteenth Judicial District,
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellants:

Denzil R. Young argued, Baker, Montana

For Respondent:

Gene Huntley argued, Baker, Montana

---

Submitted:  May 6, 1977

Decided: ᴀᴘʀ ₈ 1977

Filed:

*Thomas J. ...*
_____
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants Ray Olin and Rolin Mfg.,Inc. appeal from a Fallon County jury verdict and judgment in favor of plaintiff Edward R. Sikorski, in the amount of $10,000 for breach of a sales representative contract.

Edward Sikorski filed suit against Ray Olin as the manager of Rolin Mfg.,Inc. alleging a breach of contract. Defendants answered by admitting the existence of a contractual relationship but denying any liability for a breach. Discovery consisted of Sikorski's deposition of Olin and interrogatories answered by Sikorski. On the day of trial, the trial court allowed Sikorski to amend one answer to the interrogatories to reflect the full extent of the asserted agreement. Following trial, the jury returned a verdict for $10,000 in favor of Sikorski and against Olin and Rolin Mfg., Inc. (hereinafter referred to as Olin and Rolin or Olin). Olin and Rolin appeal.

This Court on appeal is asked to consider numerous questions regarding the trial of this matter. In substance, these questions constitute but two arguable issues:

(1) Whether the district court erred in permitting Sikorski to amend the previously answered interrogatories, and

(2) Whether the evidence offered by Sikorski was sufficient to support the jury's award of $10,000 damages.

The facts are: Sikorski alleged in his complaint and provided evidence at trial that in January 1971, Olin and Rolin agreed Sikorski would become a sales representative for Rolin in the sale of machinery and equipment produced by Rolin. Sikorski maintained the contract was to extend for one year and he was to

receive as compensation therefor 7% of dealer costs for all sales up to $60,000 and 8% for all sales exceeding that amount. At trial, Sikorski testified he was to receive a 5% commission on improvements he might make, based on wholesale prices of the improved equipment.

Sikorski alleged full performance on his part, consisting of numerous demonstrations of the machinery and arrangements for dealer distribution. He testified that over a period of four months, he spent approximately 75% of his time in performing under the agreement. Sikorski's testimony at trial that he should have received $3,750 for his efforts in this regard was received without objection. Also, received without objection, was proof that Sikorski had devised improvements for certain functions of the machinery and he should have realized therefrom a $2,000 commission. He testified had he been allowed to perform, he would have realized an estimated $4,800 in commissions by the end of the first year. This, too, was received without objection.

In support of the estimate, Sikorski offered uncontroverted testimony he arranged for the sale of a large amount of equipment, which Rolin refused to deliver. Sikorski argued he was never in fact "terminated" as sales representative by Rolin but rather that he himself ceased performance in June 1971, when Rolin refused to deliver requested machinery and delegated his sales territory to another agent.

Rolin, on the other hand, contended the terms of the contract were those embodied in a letter sent by Olin to Sikorski, received by Sikorski in March 1971. The letter purported to limit the length of the contract to three months, subject to extension to

one year. Under its terms, Sikorski was to receive a 7% commission on sales up to $60,000 and 8% for amounts in excess of $60,000.

It was Olin and Rolin's position in their answer to Sikorski's complaint that Sikorski had made no sales and earned no commissions and therefore was not damaged because he failed to perform. However, Olin, in his testimony in his deposition and as an adverse witness at trial, recanted and admitted a sale.

Olin and Rolin's first contention is that they were surprised and prejudiced when the trial court permitted Sikorski to amend an answer to his own interrogatories on the day of trial. They claim Sikorski was allowed to interject what, in effect, constituted a "new contract" by comparison to the contract as pled and as disclosed by prior discovery. It is maintained the "new contract" created new issues, and therefore Sikorski's proof at trial should have been limited to those damages, if any, occasioned by breach of the originally disclosed contract.

However, the record consisting of the pleadings, answers to interrogatories and Olin's testimony through deposition and at trial, establish that Olin and Rolin were well aware of the broader contractual terms upon which Sikorski intended to rely at trial. Moreover, it is noteworthy Rolin did not request a continuance, on the ground of such alleged surprise or undue advantage.

Rule 33, M.R.Civ.P. authorizes use of interrogatories for the purpose of pretrial discovery from an adverse party. This rule is liberally construed to make all relevant facts available to parties in advance of trial, and to reduce the possibilities of surprise and unfair advantage. Wolfe v. Northern Pacific Ry. Co., 147 Mont. 29, 409 P.2d 528 (1966).

However, failure to properly answer certain interrogatories will not be deemed in every case to effect censure of material which should rightfully be developed in a trial on the merits. A detailed statement of the applicable rule and corresponding reasoning appears in Wolfe v. Northern Pacific Ry. Co., supra:

"* * * Even though under Rule 37 sanctions may be imposed upon a party who fails to comply with the discovery requirements of the rules, and specifically upon a party who fails to properly answer his interrogatories, necessarily it must lie within the authority of the trial judge to determine from the circumstances of each case what constitutes compliance and non-compliance and to determine what sanctions, if any, are to be imposed. A strict rule of exclusion could in many instances defeat the desired goal of a decision on the merits. Such a misfortune, we feel, may be avoided if we heavily rely upon the watchful eye of the trial judge whose vision normally is focused upon the delicate balance which weighs the server's right to demand answers to his interrogatories and the extent of the adverse party's compliance. In interpreting these rules we will reverse the trial judge only when his judgment may materially affect the substantial rights of the appellant and allow a possible miscarriage of justice." 147 Mont. 29, 40-41.

We note, in reviewing the claims of surprise and unfair advantage, that Sikorski's complaint sets forth the same precise contractual terms as to duration and remuneration for sales as were subjected to proof at trial. Moreover, testimony of Olin established he had made certain contractual promises to Sikorski, specifically regarding compensation for improvements. It is clear the central issues of the case were formulated well in advance of trial, and Olin and Rolin had knowledge of all facts responsive to Sikorski's claims at trial. Hence, any surprise or prejudice to Olin and Rolin in this regard was minimal, at most. Moreover, by not requesting a continuance after the

trial judge granted the right to amend the interrogatory, Olin and Rolin waived any right to claim error on appeal. Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48 (1968); 17 C.J.S. Continuances § 13.

The action of the trial judge, in permitting the amendment to the single interrogatory answer, was proper and should be sustained. Olin and Rolin were afforded every opportunity, through cross-examination, to test the credibility of Sikorski's version of the contract. We find no miscarriage of justice by permitting the amendment.

Since Olin and Rolin also failed to object to almost all of the evidence introduced by Sikorski, this Court's function on review, except where there will be a manifest miscarriage of justice, is extremely limited.

Here, the jury returned a general verdict in favor of Sikorski in the amount of $10,000. Items of damage specifically offered by Sikorski, by his testimony, included these amounts:

1. $3,750 for the value of time expended in performance of the contract;

2. $4,800 for loss of sales commissions which would have been received but for the breach; and

3. $2,000 for loss of commissions on inventions.

The law controlling the award of damages in such cases was placed before the jury in the form of instructions from the court. The instructions, taken from sections 17-301 and 17-302, R.C.M. 1947, were:

> Instruction No. 12. "For the breach of an obligation arising from contract, the measure of damages, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Instruction No. 11. "No damages can be recovered for a breach of contract which are not clearly ascertainable in their nature and origin."

See Lovely v. Burroughs Corp., 165 Mont. 209, 527 P.2d 557 (1974).

Plainly, the damages alleged by Sikorski relate to the failure on the part of Olin and Rolin to supply equipment and machinery for resale, and premature termination of the contractual relationship with Sikorski. There is no real question as to proximate causation of damages. Rather, it is stressed the offered proof of damages was overly speculative and therefore an improper basis for the present damage award.

Olin and Rolin concede damages to the extent of the value of time invested by Sikorski in performance of the contract in the amount of $3,750. However, the striking fact that emerges from a review of the record is that counsel for Olin and Rolin wholly failed to object to Sikorski's evidence on the other items of damage and the method of computing those damages.

It is elementary that unless a party urging error has made timely objection to evidence or testimony at the trial level, it will not be considered by this Court on appeal. In re Stevenson, 167 Mont. 220, 538 P.2d 5 (1975); Berdine v. Sanders County, 164 Mont. 206, 520 P.2d 650 (1974); Boehler v. Sanders, 146 Mont. 158, 404 P.2d 885 (1965). While the computations offered may have been subject to the objection that they were speculative in nature, we refuse to consider the matter for the first time on appeal.

We have said, in prior cases, that any award of damages is necessarily grounded, to some degree, upon conjecture and surmise.

However, the question of damages is clearly one to be determined by the intelligence and common sense of the jury. Waltee v. Petrolane, Inc., 162 Mont. 317, 511 P.2d 975 (1973).

We find the evidence, admitted without objection, is sufficient to support the jury verdict.

We affirm the judgment of the district court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

Justices.