No. 82-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

JAMES E. PRESTON and ELIZABETH PRESTON,

Plaintiffs and Appellants,

vs.

SIDNEY G. McDONNELL,

Defendant and Respondent.

_____

Appeal from:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone
                Honorable William J Speare, Judge presiding.

Counsel of Record:

        For Appellants:

            Whalen & Whalen, Billings, Montana
            Hauf and Forsythe, Billings, Montana

        For Respondent:

            Moulton, Bellingham, Longo & Mather, Billings,
            Montana

_____

                            Submitted on briefs: January 6, 1983

                                Submitted:   February 24, 1983

Filed:   FEB 24 1983


_Ethel M. Harrison_
_____
                    Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Elizabeth Preston and James Preston, mother and son, brought this action to rescind two contracts they had with the defendant, Sidney McDonnell. Upon a special jury verdict finding neither fraud nor failure of consideration, the District Court of the Thirteenth Judicial District, Yellowstone County, entered judgment for McDonnell. McDonnell was thereafter awarded $9,500 in attorney fees and $210 in costs.

In early 1977, James Preston and his mother Elizabeth Preston bought a bakery in Billings, Montana. In 1978 they became interested in buying another bakery in Red Lodge, Montana. James Preston inspected the Red Lodge bakery, noting that it needed cleaning and minor repairs.

On January 5, 1979, Prestons bought the Red Lodge bakery. Two contracts were signed, one for the purchase of the business, the other for the real property. In the contract for the sale of the business, the seller, McDonnell, expressly represented that to his knowledge, he had complied with all government rules and regulations.

The controversy here centers upon the difficulty the Prestons then had in obtaining a license from the Montana Department of Health.

On January 30, 1979, two inspectors from the Department of Health attempted to inspect the bakery, but were refused entry by the Prestons. The inspectors returned on February 1 and were allowed to complete their inspection.

The inspectors noted many violations of the state's health standards. These violations, or deficiencies, resulted mostly from inadequate cleaning. Other deficiencies included lack of adequate lighting, storage of food too close to the floor, no fan in the lavatory, and a two-compartment rather than a three-compartment sink.

The Health Department then requested the Prestons to make a "plan of correction," outlining when and how they would correct

the deficiencies. The Department wanted this plan within ten days. The Prestons did not submit a plan, claiming that it would be too expensive to correct all of the deficiencies at once. At trial, James Preston estimated that it would cost between $40,000 and $60,000 to bring the bakery up to standards.

Prestons continued to have problems with the Health Department throughout that year. A hearing was held before a Department hearing's officer, with no satisfactory results. While the Prestons were never given a license, they were also never expressly denied one. Meanwhile, the bakery was open and operating.

Frustrated by their inability to obtain a health license, the Prestons sent a notice of rescission to McDonnell in January 1980. This was the first time McDonnell knew that Prestons were having difficulty getting a license. Prestons closed the bakery on February 27, 1980, returning their keys to McDonnell.

McDonnell took possession of the bakery on March 10, 1980. After spending approximately $4,200 to correct the deficiencies listed by the Health Department, he obtained a health license and reopened the bakery.

Prestons brought this action for rescission on the grounds that McDonnell fraudulently represented that the bakery was in full compliance with Department of Health standards.

McDonnell had operated the bakery for nearly seventeen years. He had obtained a health license for the years 1973, 1975, 1976, 1977, and 1978. The District Court refused to admit into evidence two conditional health licenses McDonnell received in 1968 and 1969.

The Prestons have raised two issues on appeal:

1. Whether the District Court erred by not admitting into evidence the two conditional health licenses given to McDonnell in 1968 and 1969.

2. Whether the District Court erred by awarding attorney fees and costs to McDonnell.

In the first issue, appellants argue that the conditional health licenses are relevant because they tend to show that McDonnell knew the bakery would not meet health standards. Respondent claims, and the District Court decided, that the conditional licenses were so remote in time that they had little, if any, probative value and were therefore not relevant.

In determining whether evidence is too remote to be relevant, a trial court is not guided by any fixed rules. Rather, the nature of the evidence and the circumstances of the particular case must control. 2 Wigmore, Evidence §437 (Chadbourn rev. 1979). For this reason, the determination of remoteness is left in great part to the trial court's discretion. Wigmore, supra; Courtney v. Courtney (1975), _____ Alaska _ , 542 P.2d 164; Gilliland v. Rhoads (1975), _____ Wyo. _____ , 539 P.2d 1221; Blankenship v. Brookshier (1966), 91 Ida. 317, 420 P.2d 800; and Morrison v. Bradley (1980), _ _ Colo.App. _ _ , 622 P.2d 81, cert. granted Dec. 15, 1980. The trial court's determination of relevancy is subject to review only in the case of manifest abuse. See also Gunderson v. Brewster (1970), 154 Mont. 405, 466 P.2d 589; Cech v. State (1979), _ Mont. _ _ , 604 P.2d 97, 36 St.Rep. 2185.

Here, the District Court did not abuse its discretion. The condition of the bakery ten years prior to its sale could easily be considered too remote and irrelevant. Many old deficiencies may have been corrected, while new, yet similar, deficiencies may have arisen. The District Court did not err by refusing admission of the conditional health licenses.

Appellants argue in the next issue that McDonnell should not be awarded attorney fees and costs. They claim that the contract provisions allowing attorney fees apply only to enforcement and not rescission of the contract. This contention lacks merit.

An argument similar to appellants' contention was raised in Winer v. Jonal Corporation (1976), 169 Mont. 247, 545 P.2d 1094. In Winer, the appellants claimed their action to recover damages

for breach of contract, fraud, and conspiracy, was grounded in tort and not in contract law, and therefore no attorney fees should be awarded. This Court summarily concluded that this argument had no merit, especially in view of appellants' requests for attorney fees in all counts of their pleadings. Similarly, here, appellants amended their complaint seeking attorney fees, and only objected to an award of attorney fees after McDonnell prevailed in the action.

Moreover, in Compton v. Alcorn (1976), 171 Mont. 230, 557 P.2d 292, this Court allowed attorney fees in an action for rescission. We reasoned that section 28-3-704, MCA, provides a reciprocal right to attorney fees to all parties to the contract in any action on the contract. Using the same reasoning, in Bartmess v. Bourassa (1982), ___ Mont. ___, 639 P.2d 1147, 39 St.Rep. 56, we allowed attorney fees based on a contract that was void ab initio. Here, because the contracts provide for the award of attorney fees and costs to the prevailing party, the award of fees and costs was proper.

Finding no error, the District Court's judgment is affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

- 5 -