No. 87-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ROBERT P. BARRETT,

             Plaintiff and Respondent,

    -vs-

ASARCO INCORPORATED, a New Jersey
corporation, and ROBERT D. HEARST,

             Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District,
                In and for the County of Lewis & Clark,
                The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Holland & Hart; James A. Ragain and Kyle A. Gray
        argued, Billings, Montana

    For Respondent:

        Gene A. Picotte argued and Robert M Kampfer argued,
        Clancy, Montana

Submitted:     June 21, 1988

Decided:      October 11, 1988

Filed:

_Ethel M. Harrison_

————————————————————
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.


ASARCO appeals a Lewis and Clark County District Court order denying ASARCO's motion for a new trial. We reverse and remand for a new trial.

Robert P. Barrett (Barrett) was employed by ASARCO for fifteen years and five months. He held a managerial position as a shift foreman since 1973. On November 26, 1983, Barrett injured his back in a work related accident at ASARCO's East Helena plant. ASARCO paid Barrett his full salary and reimbursed Barrett for medical expenses from the date of the injury until May 8, 1984, when Barrett's employment was terminated.

ASARCO met with Barrett on May 8, 1984. At that meeting, the plant superintendent, Robert Hearst, confronted Barrett with information received from another ASARCO employee, namely, that Barrett had been observed unloading hay bales at the Helena Fairgrounds while he continued to receive full salary from ASARCO for his earlier back injury. Barrett denied any involvement in unloading hay bales, and he was subsequently fired for lying to ASARCO about his physical activities.

Barrett filed this action on May 7, 1985, alleging that ASARCO had breached the implied covenant of good faith and fair dealing in the context of an employment relationship. The District Court set October 31, 1986 as the deadline for answers to interrogatories, with all discovery to be completed by November 3, 1986. On December 16, 1986, ASARCO learned the names of six witnesses who allegedly had information about various incidents of dishonesty by Barrett during his employment and within three years of his

termination date. These incidents allegedly included lying to superiors about sleeping on shift and about taking sick leave, stealing several hundred dollars worth of tools and equipment from ASARCO, and requesting one of his crew members to also steal for him. Consequently, twenty-four days prior to trial, on January 8, 1987, ASARCO supplemented its interrogatories and witness list to include the names of these six witnesses.

On January 13, 1987, Barrett moved in limine to exclude this evidence on the grounds that the testimony was irrelevant and disclosed after the discovery deadline. Thereafter, ASARCO offered to let Barrett depose each of the new witnesses and to order expedited transcripts, both at ASARCO's expense. Barrett's attorney initially accepted this offer but then cancelled the depositions, moving instead to exclude this new evidence. On January 28, 1987, the District Court ruled that Barrett was not prejudiced by ASARCO's late disclosure of additional witnesses and service of supplemental interrogatory answers, ruling that:

> 1. ASARCO was not aware of the identity of the witnesses before the discovery deadline;
>
> 2. the supplemental answers were served twenty-four days _before_ trial;
>
> 3. Barrett had an opportunity to depose the witnesses at ASARCO's expense but declined to do so;
>
> 4. Barrett did not move for a continuance. (Emphasis theirs.)

Consequently, the District Court denied Barrett's motion in limine without prejudice.

Barrett renewed its motion in limine on February 1, 1987, the day before trial, asserting that ASARCO knew of the

witness testimony over five months before the discovery deadline. On February 3, 1987, two days into the trial, the District Court granted this motion in limine, barring the alleged evidence of employee misconduct.

The jury trial commenced on February 2, 1987. On February 10, 1987, the jury returned a verdict in favor of the plaintiff in the amount of $338,500 in compensatory damages and $75,000 in punitive damages.

On February 17, 1987, Cheryl Lynn Uphaus (Uphaus), a person omitted from Barrett's interrogatory answers as a person with knowledge relevant to the case, contacted ASARCO claiming knowledge allegedly illustrating that the jury verdict clearly was erroneous. ASARCO subsequently met with Uphaus and she signed a sworn statement concerning a conversation she overheard and activities she observed Barrett engage in during his disability leave from ASARCO. These alleged activities appeared inconsistent with a severe back injury. She alleged that she had overheard Mike Barrett, a fellow foreman at ASARCO, tell his brother Robert Barrett not to haul or unload hay anymore. In response, Barrett allegedly told his brother that he could continue to haul hay if he concealed his activities from ASARCO.

On February 25, 1987, ASARCO moved for a new trial alleging that it was deprived of a fair trial because of the District Court's exclusion of witness testimony about previous alleged incidents of Barrett's dishonest dealings with ASARCO. Additionally, ASARCO asserted that the newly discovered information from Uphaus merited a new trial.

The District Court denied ASARCO's motion for a new trial and this appeal followed. ASARCO raises the following two issues:

4

1. Did the District Court err and abuse its discretion by excluding testimony concerning incidents of respondent Barrett's alleged dishonesty with ASARCO?

2. Did the District Court abuse its discretion by refusing to grant appellant ASARCO a new trial based on:

(a) Barrett's failure to disclose the name of Cheryl Lynn Uphaus in response to ASARCO's discovery requests; and

(b) the newly discovered evidence from Uphaus?

## I. ISSUE ONE

The District Court barred the evidence of Barrett's alleged employment dishonesty on the following five grounds:

(a) ASARCO may well have had knowledge of some of the matters prior to the discovery cut-off date.

(b) the instances of conduct which are the subject of the testimony are too remote in time to be of any probative value;

(c) the instances of conduct had nothing to do with the termination of Barrett's employment;

(d) the relevancy of the instances of conduct is remote and the prejudicial effect of the evidence outweighs its probative value; and

(e) allowing the testimony would lead to "mini trials" concerning the merits of the allegations made by the witnesses.

This opinion will address each of the District Court's five grounds for excluding the evidence of Barrett's alleged employee misconduct.

## A. LATE DISCLOSURE

The District Court's first reason for excluding ASARCO's offered evidence was that ASARCO made a late disclosure of the witnesses who would testify as to Barrett's alleged employee misconduct. Rulings on the admissibility of evidence are within the discretion of the district court. Rule 104, M.R.Evid.; Cooper v. Rosston (Mont. 1988), 756 P.2d 1125, 1127, 45 St.Rep. 978, 981. We will not reverse a district court's ruling on the admissibility of evidence unless we determine that the district court abused its discretion. Cooper, 756 P.2d at 1127, 45 St.Rep. at 981.

This Court has noted that the district court has the discretion to control discovery activities. State of Oregon ex rel. Worden v. Drinkwalter (Mont. 1985), 700 P.2d 150, 152, 42 St.Rep. 599, 601. It is also within the district court's discretion to decide what sanctions are to be imposed on a party who fails to comply with discovery rules. Sikorski v. Olin (1977), 174 Mont. 107, 111, 568 P.2d 571, 573.

In Sikorski, the trial court allowed Sikorski to amend one answer to an interrogatory on the day of trial. On appeal, Olin contended that he was surprised and prejudiced by the trial court's decision to allow Sikorsky to amend his interrogatories on the day of trial. This Court found it noteworthy that Olin did not request a continuance on the ground of surprise or undue advantage and opined that the failure to request a continuance constituted a waiver by Olin to claim any error on appeal. Sikorsky, 568 P.2d at 573.

Barrett asserts that, had the District Court allowed the evidence, he would have been prejudiced because the necessary preparation to defend the accusations of employee dishonesty "would require more work than the main case." No facts exist, however, which support Barrett's contention that he would have been prejudiced. ASARCO gave notice of the new

6

witnesses and the content of their testimony nearly a month before trial. ASARCO also offered to promptly have the new witnesses deposed at its expense. Yet, Barrett refused ASARCO's offer to bear the expenses of depositions and expedited transcripts and also failed to request a continuance. Barrett may not claim prejudice given these facts.

Barrett's claim that ASARCO knew five months before the discovery deadline of the existence of witnesses who might testify to Barrett's alleged employee misconduct similarly fails to merit an exclusion of the evidence. The exclusion of evidence for noncompliance with discovery rules is a harsh remedy. Wolfe v. Northern Pacific Railway Co. (1966), 147 Mont. 29, 40-41, 409 P.2d 528, 534. Wolfe sets forth the following relevant language with regard to this issue:

> Rule 33, M.R.Civ.P., authorizing the use of interrogatories for purposes of pre-trial discovery from any "adverse party," although liberally construed to make all relevant facts available to parties in advance of trial and to reduce the possibilities of surprise and unfair advantage [citation omitted], cannot become a weapon for punishment or forfeiture in the hands of a party, or an instrument for avoidance of trial on the merits. The rule, in conjunction with other discovery and pre-trial procedures, has been designed to secure a just, speedy and inexpensive determination of actions, and to assure that a judgment be given on the facts as they actually exist. [Citation omitted.] Even though under Rule 37, sanctions may be imposed upon a party who fails to comply with the discovery requirements of the rules, and specifically upon a party who fails to properly answer interrogatories, necessarily it must lie within the authority of the trial judge to determine from the circumstances of each case what

7

> constitutes compliance and non-compliance
> and to determine what sanctions, if any,
> are to be imposed. A strict rule of
> exclusion could in many instances defeat
> the desired goal of a decision on the
> merits . . . In interpreting these rules
> we will reverse the trial judge only when
> his judgment may materially affect the
> substantial rights of the appellant and
> allow a possible miscarriage of justice.

Wolfe, 409 P.2d at 534. As will be discussed later in this opinion, the excluded evidence was important to the resolution of this case on the merits. Exclusion of this evidence was not warranted by ASARCO's late disclosure of new witnesses given the surrounding circumstances (i.e., ASARCO's supplementation of its interrogatory answers twenty-four days before trial, Barrett's refusal to depose the new witnesses at ASARCO's expense, and Barrett's failure to request a continuance). ASARCO's alleged knowledge of the new witnesses before the discovery deadline also does not warrant exclusion. Consequently, Barrett's claim of prejudice by ASARCO's late disclosure did not justify the exclusion of this evidence which substantially affected ASARCO's rights. Accordingly, we hold that the District Court abused its discretion by excluding the evidence on the basis of late disclosure.

## B. REMOTENESS IN TIME

The District Court's second reason for excluding the offered evidence was that the instances of Barrett's alleged employee misconduct were too remote in time to be relevant. The District Court has the discretion to determine that evidence is too remote in time and we will not reverse the District Court's determination of remoteness absent a manifest abuse of that discretion. Martin v. Laurel Cable

8

T.V., Inc. (Mont. 1985), 696 P.2d 454, 457, 42 St.Rep. 314, 316; Preston v. McDonnell (1983), 203 Mont. 64, 67, 659 P.2d 276, 277.

No fixed test exists by which the district court may determine remoteness of evidence. Rather, remoteness depends upon both the nature of the evidence and the circumstances of the case. Preston, 659 P.2d at 277. Given the nature of the evidence and circumstances in Martin, this Court ruled that a six-year-old letter was not too remote to have been admitted into evidence. Martin, 696 P.2d at 457. However, in Preston, this Court upheld the exclusion of two ten-year-old documents because of their remoteness. Preston, 659 P.2d at 277.

In the instant case, the evidence ASARCO sought to introduce into evidence, which included acts of alleged employee dishonesty and theft, occurred within three years of Barrett's employment termination. Additionally, the nature of the alleged witness testimony excluded by the District Court directly pertains to the issue of Barrett's honesty with his employer. The alleged witness testimony is thus relevant to ASARCO's defense that it terminated Barrett for his dishonesty. Given the relatively short length of time elapsing from the occurrence of the disputed evidence until trial, the eyewitness nature of the evidence and the importance of the evidence to ASARCO's ultimate defense of termination for dishonesty, we hold that the District Court erred in excluding such evidence on the basis of remoteness in time.

C. RELEVANCY AND THE "FLANIGAN" RULE

The District Court stated, as its third reason for excluding evidence, that the alleged previous incidents of dishonesty were discovered only after ASARCO fired Barrett

and thus were not relevant since after-acquired evidence may not serve as additional reasons for termination of an employee. See Flanigan v. Prudential Federal Savings & Loan (Mont. 1986), 720 P.2d 257, 43 St.Rep. 941. After-acquired evidence, however, may be introduced if relevant to the character of a party when that character is an essential element of the defendant's original defense. Rule 404(c), M.R.Evid., states:

> Evidence of a person's character or a trait of his character is admissible in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense.

Additionally, Rule 405(b), M.R.Evid., provides that a party may introduce specific instances of that conduct which relate to the character at issue.

Rule 404(c), M.R.Evid., is directly applicable to the evidence excluded in this case. ASARCO based its termination decision upon Barrett's alleged dishonest about previous hay-lifting activities. The honesty of Barrett was placed in issue by ASARCO's defense of its termination decision. Further, ASARCO did not seek to offer the after-acquired evidence of Barrett's previous alleged incidents of dishonesty as additional reasons justifying the termination decision. Rather, ASARCO intended to demonstrate that its original reason for terminating Barrett, namely, his alleged dishonesty about hay-lifting activities, was indeed an honest defense as attested to by other recent incidents of alleged dishonesty.

The issue of Barrett's alleged previous penchant for dishonesty with his employer is in turn critical to a determination of whether the dishonesty alleged by ASARCO on May 8, 1987 did in fact occur. An employer does not breach the implied covenant of good faith and fair dealing by sudden

termination of an employee who has a reasonable expectation of job security if the employer has a fair and honest reason for such termination. As this Court stated in Flanigan:

> The covenant, in a long-term employment situation, only requires the employer to have a fair and honest reason for termination. An employee's incompetence or lack of loyalty certainly constitute sufficient reasons under this standard.

Flanigan, 720 P.2d at 262. A termination of an employee because of lies to an employer certainly would constitute such a fair and honest reason for termination. If such a reason for termination honestly exists in this case, ASARCO could not be held in breach of the covenant.

Further, alleged evidence of previous incidents of dishonesty would be relevant to the issue of whether an employee has a reasonable expectation of job security and thus may claim the protection of the implied covenant of good faith and fair dealing. As stated in Dare v. Montana Petroleum Marketing Co. (Mont. 1984), 687 P.2d 1015, 41 St.Rep. 1735:

> [T]he implied covenant protects the investment of the employee who in good faith accepts and maintains employment reasonably believing their job is secure so long as they perform their duties satisfactorily. (Emphasis added.)

Dare, 687 P.2d at 1020.

Protection necessarily hinges on the employee's good faith performance of job duties because the covenant of good faith and fair dealing mandates a reciprocal duty. The United States Court of Appeals for the Ninth Circuit has described this reciprocal duty of good faith and fair dealing as a "two-way" street demanding mutual compliance. Los Angeles Memorial Coliseum Comm'n v. NFL (9th Cir. 1986), 791

11

F.2d 1356, 1361, cert. denied, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). The District Court similarly recognized the reciprocal nature of the covenant and thus correctly offered the following instruction to the jury:

> When the covenant of good faith and fair dealing is implied in the employment relationship, the duty is reciprocal; that is to say, the employer owes the employee a duty of good faith and fair dealing and the employee owes the employer the same duty.

Indeed, as stated in Los Angeles Memorial Coliseum Comm'n, an employee who breaches his or her duty of good faith and fair dealing may not then complain of unfair dealing by the employer. The Ninth Circuit in Los Angeles Memorial Coliseum Comm'n thus held that the Raiders football team franchise could not circumvent the NFL's procedures for relocating football team franchises on the one hand, yet maintain, on the other hand, a lawsuit against the NFL for breach of the covenant occasioned by the NFL's unreasonable withholding of relocation authorization. The Ninth Circuit held that breach of the implied covenant by one party served to negate any breach by the other party, such that neither party was entitled to recovery. See Los Angeles Memorial Coliseum Comm'n, 791 F.2d at 1361. The Ninth Circuit, however, warned of the narrow application of this rule stating:

> We emphasize that our ruling does not embrace a broad rule whereby any two breaches of the implied good faith promise by opposing contracting parties constitute "offsetting penalties" which cancel each other out; our ruling applies only to factual contexts such as the present one, where both breaches concerned the same issue and occurred during one episode of the contractual relationship.

<u>Los Angeles Memorial Coliseum Comm'n</u>, 791 F.2d at 1362-63.

Similarly, Barrett cannot claim that ASARCO's alleged sudden, "underhanded" termination decision was a breach of the covenant of good faith and fair dealing if Barrett himself failed to deal honestly in his job performance with ASARCO. Recent alleged acts of dishonesty by Barrett involve the same issue of fair dealing within the employment relationship that Barrett alleges ASARCO breached. Evidence of such alleged immediate dishonesty on Barrett's part is certainly relevant to a determination of whether Barrett had a <u>reasonable</u> belief in job security and thus may claim protection under the covenant, or whether in fact any claim by him of a breach of good faith and fair dealing was negated by his similar breach with ASARCO. Consequently, we hold that the District Court erred in excluding the evidence of Barrett's alleged employee misconduct, which misconduct is relevant to a determination of whether Barrett dealt with ASARCO in good faith.

ASARCO also sought to introduce evidence of alleged employee misconduct to impeach Barrett's character for veracity under Rule 405, M.R.Evid., and to establish that Barrett had a habit or routine practice of lying to his employers under Rule 406 M.R.Evid. ASARCO's arguments in this regard need not be addressed in light of the above discussion and our holding that the evidence in question is admissible on other grounds.

D. PROBATIVE VALUE VERSUS PREJUDICIAL EFFECT

In its fourth reason for exclusion of the evidence in question, the District Court found that, even though the evidence might have some tangential relevancy concerning Barrett's character and his damages, the prejudicial effect of the evidence outweighed any probative value. Relevant

evidence is defined as that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Rule 401, M.R.Evid. Rule 403, M.R.Evid., allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . "

Evidence of Barrett's alleged employee misconduct had a tendency to make the existence of his lack of good faith and absence of a reasonable expectation in job security more or less probable. The District Court instructed the jury that Barrett's good faith must be presumed and that this presumption could only be rebutted by proof of bad faith. The District Court then excluded the very evidence ASARCO offered to rebut that presumption. ASARCO contends that the probative value of the evidence outweighs any prejudice to Barrett because of the reciprocal nature of the covenant of good faith and fair dealing. We agree. ASARCO was entitled to have the jury consider all evidence probative on the issues, not just the evidence favoring Barrett. We hold that the District Court erred in excluding the evidence on the grounds of unfair prejudice.

E. THE MAIN ISSUES OF THE CASE

The District Court opined that the issues raised by ASARCO's offered evidence would lead to "mini trials" which would detract from the main issues of the case. The main issues of this case involve allegations of breach of the covenant of good faith and fair dealing that existed between ASARCO and Barrett. The offered evidence is probative and admissible because it provides evidence directly relevant to ASARCO's central defense of alleged dishonesty and to the reasonableness of Barrett's expectation of job security.

14

Accordingly, the District Court also erred in excluding evidence of Barrett's alleged employee misconduct on the grounds that the evidence would detract from the main issues of the case.

II. ISSUE TWO

ASARCO's first issue is dispositive of this appeal and, on the basis of our holding above, this case is reversed and remanded for a new trial. Accordingly, we will not address ASARCO's second issue regarding newly discovered evidence.

Reversed and remanded for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

15

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent. The majority's opinion may have the effect of severely weakening the implied covenant of good faith and fair dealing within employment relationships. The majority holds that Barrett's alleged dishonesty is relevant in determining whether Barrett had a reasonable belief in job security, which would allow him protection under the covenant, or whether the covenant was negated by his alleged dishonesty during the past three years. Under such reasoning, an employer may drag up incidents from the distant past to escape being subject to the implied covenant of good faith and fair dealing.

Rare is the employee that can assert undying loyalty to a company employer and a flawless work record. Consequently, the majority's decision allows a company employer to defeat the covenant by bringing up an employee's alleged misconduct at trial, even though the employer had not previously reprimanded the employee for such conduct at the time of the conduct nor warned the employee of the serious consequences of doing such conduct. Conceivably, the judge or jury could determine that an employee's conduct, such as a tendency to take ten extra minutes for a coffee break once a week for the last three years, could defeat the covenant even though the employer failed to state its dissatisfaction with such practices at the time.

In Dare v. Montana Petroleum Marketing Co. (Mont. 1984), 687 P.2d 1015, 41 St.Rep. 1735, this Court held that "whether a covenant of good faith and fair dealing is implied in a particular case depends upon objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly"

(emphasis added). 687 P.2d at 1020, 41 St.Rep. at 1739. The covenant "protects the investment of the employee who in good faith accepts and maintains employment reasonably believing their job is secure so long as they _perform their duties satisfactorily_" (emphasis added). 687 P.2d at 1020, 41 St.Rep. at 1740. While the majority implies that the holding in _Dare_ is still applicable, their holding in the instant case creates an uncomfortable ambiguity. In _Dare_, the applicable standard for an employee to assert the implied covenant of good faith and fair dealing is an "objective manifestation by employer" and a "reasonable belief" by the employee of job security.

In the present case, Barrett had worked for ASARCO for over fifteen years before he was fired. He had held a managerial position as a shift foreman since 1973. No evidence exists that would indicate that Barrett failed to perform his duties as a shift foreman satisfactorily. The record indicates that Barrett was fired solely because witnesses had allegedly seen him unloading bales of hay despite his severe back injury. When the trial drew near, however, ASARCO relied upon past conduct of Barrett's that ASARCO found undesirable, and boldly asserts that such conduct would rebut an employee's reasonable belief of job security even after fifteen years of service with ASARCO.

I have no reservation in requiring an employee to act in good faith and deal fairly with the employer, however, I object to the holding that would allow an employer to rebut the implied covenant of good faith and fair dealing it owes to an employee when the employer gave no objective manifestations that it was displeased with the employee, and now claims that the employee has no reasonable belief of job security because of something the employee may have done three years ago or more. An employer has a duty to the

- 17 -

employee to act in good faith and deal fairly with the employee, this would include warning the employee, at the time of an undesirable conduct by the employee, that the conduct, if continued, may lead to the employee's firing.

I also assert that the majority erroneously applied the Ninth Circuit Court decision, Los Angeles Memorial Coliseum Comm'n v. NFL (9th Cir. 1986), 791 F.2d 1356, cert. denied, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987) in this case. The court in Los Angeles Memorial Coliseum Comm'n specifically stated that the rule enunciated in that case applies only when "both breaches concerned the same issue and occurred during one episode of the contractual relationship." Los Angeles Memorial Coliseum Comm'n, 791 F.2d at 1362-63. In the present case, Barrett's alleged past conduct, that may have occurred three years ago and which may have included taking a nap while at work, cannot be considered the same issue or episode as whether he lifted hay bales after his back injury. I contend that the majority's broad application of this rule is exactly what the Ninth Circuit's warning intended to guard against.

I would therefore hold that ASARCO should not be allowed to rebut the implied covenant of good faith and fair dealing by introducing evidence of Barrett's alleged conduct which ASARCO is apparently using only to justify its firing of Barrett.

_____
Justice

I concur in the foregoing dissent of Justice Hunt.

_____
Justice

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 87-303

ROBERT P. BARRETT,

Plaintiff and Respondent,

v.

ASARCO INCORPORATED, a New Jersey
corporation, and ROBERT D. HEARST,

Defendants and Appellants.

)
)    O R D E R
)
)

The initial opinion in this cause was decided and filed with the Clerk of this Court on October 11, 1988. It has since come to the attention of this Court that a typographical error exists and we therefore order the following change:

IT IS ORDERED:

1. That the date shown as May 8, 1987 on page 1871 of 45 State Reporter and on page 32 of 763 Pacific 2d. be changed to reflect the correct date of May 8, 1984 and thereafter to read:

> The issue of Barrett's alleged previous penchant for dishonesty with his employer is in turn critical to a determination of whether the dishonesty alleged by ASARCO on May 8, 1984 did in fact occur. (Change emphasized.)

Barrett v. ASARCO Inc. (Mont. 1988), 763 P.2d 27, 32, 45 St.Rep. 1865, 1871.

DATED this 4th day of May, 1989.

_____
Chief Justice

_____

1