No. 89-547

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

MARK MELOTZ,
d/b/a MELOTZ TRUCKING,

Plaintiff and Respondent,

-vs-

CRAIG SCHECKLA,
d/b/a SCHECKLA TRUCKING,

Defendant and Appellant.

FILED

NOV 27 1990

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James A. Patten, Patten Law Firm, P.C., Billings,
Montana

For Respondent:

John Houtz, Attorney at Law, Forsyth, Montana

Submitted on Briefs:  August 23, 1990

Decided:  November 27, 1990

Filed:

_____
Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Appellant Craig Scheckla, appeals from a judgment entered on a jury verdict rendered in the Sixteenth Judicial District, Rosebud County, awarding respondent Mark Melotz damages for breach of warranty. We affirm.

Scheckla raises the following issues on appeal:

1. Did the District Court abuse its discretion by allowing admission of an exhibit at trial when the court had earlier imposed discovery sanctions which prohibited the admission of such exhibit?

2. Did the District Court abuse its discretion by failing to prohibit evidence of lost income as a sanction for discovery abuse?

3. Was the existence of a warranty supported by sufficient evidence?

4. Was respondent Melotz entitled to consequential damages for breach of warranty?

Appellant, Craig Scheckla, owns a trucking business and hauls wood products for a sawmill in Sheridan, Wyoming. Respondent, Mark Melotz, is likewise in the trucking business and hauls on a contract basis. In July of 1985, Melotz purchased from Scheckla a used 335 Cummins diesel engine for $3,000 which was installed in Melotz's 1970 Peterbilt truck. According to Melotz's testimony at trial, when he and Scheckla discussed the sale of the engine Scheckla told him "[a]ll you [have to] do is take it home, put it in there [in the truck] and it will go right to work and it was in good running condition." Melotz further testified Scheckla also

told him the engine recently had some major work done to it.

After installing the engine in late July of 1985, Melotz immediately encountered problems with the oil pressure. When informed of the problem by Melotz, Scheckla told him this type of engine had low oil pressure and, according to Melotz's testimony, Scheckla told him to replace the bearings and if that did not fix the problem Scheckla would "pay for the bearings and everything." Shortly thereafter, Melotz hauled a load to Logan, Utah. During this trip Melotz encountered problems of low oil pressure and engine overheating. From Utah, Melotz took a load to Oregon and en route the problems with low oil pressure and overheating continued. In Oregon Melotz had new bearings installed. Melotz then headed to South Dakota with continuing problems. While passing through Dubois, Wyoming on the way to South Dakota, Scheckla's mechanic examined the engine and replaced a cracked head.

Due to continuing problems with the engine, Melotz parked the truck during the months of September and October of 1985. Scheckla recommended new head gaskets and Melotz installed them in early November of 1985. On November 4, 1985, Melotz, believing his truck was capable of performing the job, entered into a contract to haul rip-rap for Midwest Dumpers, Inc. at Canyon Ferry Lake. Shortly before he was to commence work on the contract, Melotz had to notify Midwest Dumpers that he was unable to perform due to overheating problems which started up again. The engine subsequently locked up and upon being torn down Melotz discovered

3

the engine had a cracked block and was unrepairable.

On February 18, 1986, Melotz filed a complaint against Scheckla seeking damages for breach of warranty and for other claims not relevant on appeal. This case then began a long procedural history marked by constant disputes between the parties. On November 28, 1986, Scheckla served interrogatories and a second request for production on Melotz. This discovery sought, among other items, all state and federal income tax returns and financial statements prepared within the five years preceding the filing of the complaint.

Following a motion to compel by Scheckla, Melotz responded to the discovery requests. The answers were deemed nonresponsive by the District Court and as a result Judge Alfred B. Coate imposed sanctions upon Melotz on April 10, 1987. Specifically, Judge Coate ordered: "At trial Plaintiff [Melotz] will not be permitted to introduce any evidence other than those items supplied to Defendant on December 12, 1986 [at Melotz's deposition] and marked as items 1 through 33." The Midwest Dumpers contract was not one of the marked items but was discussed at the deposition and provided to Scheckla on February 13, 1987.

On May 8, 1987, the District Court determined the amount in controversy was less than $3,500 and transferred the case to the Rosebud County Justice Court. The case was eventually transferred back to District Court on September 12, 1988.

Once back in District Court, Judge Kenneth R. Wilson assumed jurisdiction on January 20, 1989 after Judge Coate retired. Judge

4

Wilson gave Melotz another chance to produce his income tax returns and financial statements, ordering that if Melotz did not produce those items, three of his claims for damages would be dismissed. This information was not provided and on June 26, 1989, in chambers before trial, Judge Wilson ordered those claims stricken.

At trial the court refused to hear evidence on the potential profits of hauls during periods the truck experienced down time, deeming the evidence too speculative and as an additional sanction for discovery abuse. The court did allow into evidence the Midwest Dumpers contract. The jury returned a verdict in favor of Melotz in the amount of $12,026.40. The District Court reduced the verdict by $208 and Melotz's bill of costs by $359. The court then denied Scheckla's post-trial motions for judgment notwithstanding the verdict and to amend or alter the judgment.

Scheckla now appeals raising the aforementioned issues.

## I. - II.

Since issues 1 and 2 both pertain to the imposition of sanctions for discovery abuse, we will address them simultaneously.

Scheckla contends Judge Wilson abused his discretion by ignoring Judge Coate's earlier discovery sanction limiting Melotz's trial exhibits when he allowed the Midwest Dumpers contract into evidence. Citing Owen v. F.A. Buttrey Company (1981), 192 Mont. 274, 280, 627 P.2d 1233, 1236, he argues that Melotz must "suffer the consequences" of his discovery abuse and asserts that Melotz did not have to do so because he was allowed to go forward with a

major part of his case, i.e., the Midwest Dumpers contract lost profits.

This Court has previously stated that the district court has the discretion to control discovery activities. State of Oregon ex rel. Worden v. Drinkwalter (1985), 216 Mont. 9, 12, 700 P.2d 150, 152. The district court also has the discretion to decide what sanctions are to be imposed on a party who fails to comply with discovery rules. Barrett v. ASARCO, Inc. (1988), 234 Mont. 229, 234, 763 P.2d 27, 30 (citing Sikorski v. Olin (1977), 174 Mont. 107, 111, 568 P.2d 571, 573). Judge Wilson impliedly ignored or overruled Judge Coate's previous ruling and gave Melotz one last chance to produce his tax returns and financial statements. Melotz did not produce this information and Judge Wilson dismissed three items of contended damages. Certainly by striking damages amounting to $32,760, Melotz was required to "suffer the consequences." The District Court was acting well within its discretion when it allowed the contract into evidence.

Scheckla further contends the District Court abused its discretion by failing to prohibit evidence of lost income from the Midwest Dumpers contract as a sanction for discovery abuse. Scheckla argues that since he was not provided the requested financial information he had no way of ascertaining whether Melotz's testimony concerning lost profits was accurate. "The exclusion of evidence for noncompliance with discovery rules is a harsh remedy [and] . . . we will reverse the trial judge only when his judgment may materially affect the substantial rights of the

appellant and allow a possible miscarriage of justice." (Citation omitted.) <u>Barrett</u>, 763 P.2d at 30-31. We do not find that situation here. Melotz provided Scheckla with the Midwest Dumpers contract more than two years before trial. Scheckla himself was in a similar trucking business and could have testified as to profitability. Moreover, Scheckla examined Melotz in part of a seven and one-half hour deposition and again at trial on this issue.

We hold the District Court did not abuse its discretion in allowing the contract into evidence and in allowing evidence of lost income from the contract.

### III.

Scheckla attacks the jury's verdict arguing his statement that the engine could go right to work and was in good running condition was merely an opinion or "puffing" and did not create an express warranty. Scheckla also contends that the evidence presented at trial did not show that he engaged in the business of selling engines or that Melotz relied upon his skill and judgment in selecting a particular engine and therefore the evidence was insufficient to show that an implied warranty of merchantability or an implied warranty of fitness for a particular purpose had been created.

We will not disturb a jury verdict when there is substantial credible evidence in the record to support it.

> "<u>Sufficiency of the evidence</u>. We will not reverse a judgment based upon a jury

7

> verdict if there is substantial evidence in the record to support the jury verdict . . . We review in the light most favorable to the prevailing party, reversing only when there is a lack of substantial evidence to support the judgment based upon the jury verdict . . .
>
> "The 'substantial evidence' test variously expressed allows reversal only if there is a complete absence of probative facts to support the verdict . . . or if the evidence is so overwhelming there is no room for an honest difference of opinion . . . or if there is a complete absence of any credible evidence in support of the verdict." (Citations omitted.)

Flynn v. Siren (1986), 219 Mont. 359, 365, 711 P.2d 1371, 1374.

The court gave the jury instructions on express warranty, express warranty -- statement of opinion, implied warranty, and implied warranty of fitness for a particular purpose. The jury, by general verdict, found that Scheckla warranted the engine he sold to Melotz and that Scheckla had breached the warranty. After reviewing the record in a light most favorable to the prevailing party, we conclude the record contains sufficient evidence upon which the jury could find that at least an express warranty existed.

Whether a statement is an express warranty is an issue of fact. Vandalia Ranch v. Farmers Union & Oil Supply (1986), 221 Mont. 253, 259, 718 P.2d 647, 651; Whitaker v. Farmhand, Inc. (1977), 173 Mont. 345, 354, 567 P.2d 916, 921. Issues of fact are for the jury to resolve and should not be taken away from the jury because some evidence furnishes reasonable grounds for different conclusions. Kleinsasser v. Superior Derrick Service, Inc. (1985), 218 Mont. 371, 374, 708 P.2d 568, 570. In the present case

8

Scheckla represented to Melotz that the engine was in good working condition and that the engine could be put in the truck and it would go right to work. Scheckla also stated that the engine recently had major repair work done to it. The record indicates that after the engine was installed, Scheckla told Melotz to replace the bearings and if that did not correct the problem, he would pay for the repairs. Additionally, on at least one other occasion Scheckla recommended the type of repairs that should be done and Scheckla's mechanic replaced the head in an effort to correct the problems with the engine. The statements made by Scheckla, together with his conduct after the engine was installed, provides a sufficient basis upon which the jury could find that an express warranty existed.

We hold that substantial evidence supports the existence of a warranty under the circumstances of this case.


IV.

The jury, upon deciding the warranty issue in Melotz's favor and finding that Scheckla had breached the warranty, awarded Melotz consequential damages for his claim of lost profits on the Midwest Dumpers contract. Scheckla contends that under the Uniform Commercial Code Melotz had to "cover" before consequential damages could be awarded. Scheckla argues that all Melotz had to do to cover was to purchase a substitute engine, and, having failed to do so, Melotz failed to mitigate his damages and should therefore be denied any recovery of consequential damages.

Section 30-2-715, MCA, provides that consequential damages resulting from the seller's breach of warranty include "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . " In Harrington v. Holiday Rambler Corporation (1978), 176 Mont. 37, 575 P.2d 578, the plaintiffs sued the manufacturer for damages for breach of warranty because of defects in the trailer they had purchased. The defendant contended the plaintiffs failed to mitigate damages by not having the trailer repaired by a third party, failing to cover by purchasing a substitute trailer and continuing to use the trailer after they knew of the defects. In holding that the plaintiffs did not fail to mitigate damages, this Court stated the following regarding the doctrine of avoidable consequences:

> "The duty to reduce or mitigate damages is a positive one upon the injured person, but it has limits. The test is: What would an ordinary prudent person be expected to do if capable, under the circumstances?" (Citation omitted.)

Harrington, 575 P.2d at 581.

The record in the present case discloses that Melotz did what an ordinary prudent person would be expected to do under the circumstances. It is true, as Scheckla points out, that to cover would have been to purchase a substitute engine. However, there are no facts in the record to indicate the engine needed to be replaced until after the time the Midwest Dumpers contract was to be performed. The record discloses that Melotz made a number of

repairs in an attempt to make the used engine run satisfactorily. Scheckla himself noted that this type of engine has low oil pressure and advised Melotz to replace the bearings. Also, Scheckla's mechanic replaced the head in an effort to determine what was wrong with the engine.

Melotz entered into the Midwest Dumpers contract in November, 1985 when the engine had undergone recent repairs recommended by Scheckla and Melotz believed the truck was capable of fulfilling the contract. Melotz testified that it was only three or four days before he was supposed to begin performing the contract when he realized he would not be able to do so due to continuing overheating problems. At that time he notified Midwest Dumpers that he would be unable to perform the contract. It was not until March, 1986, after Melotz had lost the Midwest Dumpers contract, when the engine locked up and subsequently was completely torn down that Melotz learned the engine had a cracked block and was unrepairable.

We hold that under the above set of facts the jury could reasonably have found that Melotz's consequential damages could not be prevented by cover or otherwise.

Affirmed.

_____
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12